IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREW V. KOCHERA, JR., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ATLAS COPCO COMPRESSORS, L.L.C., et )<br>al., )<br>)<br>Defendants. ) | No.  3:14-cv-00029-SMY-SCW |

## GENERAL ELECTRIC COMPANY'S
## MOTION FOR SUMMARY JUDGMENT

Defendant General Electric Company ("GE") moves for summary judgment pursuant to Fed. R. Civ. P. 56(a) on all claims asserted against it by plaintiff Andrew V. Kochera, Jr. ("Kochera").  Kochera alleges that he was exposed to respirable asbestos fibers while serving as a United States Navy sailor aboard three U.S. Navy ships in the 1950s, and claims that such exposure caused him to contract an asbestos-related disease more than half a century later.  Specifically, with respect to GE, Kochera targets a piece of military mechanical equipment known as a Navy steam turbine that was manufactured by GE for the United States Navy in the 1940s, pursuant to a government contract that incorporated highly detailed Military Specifications, for installation aboard the aircraft carrier USS Franklin D. Roosevelt ("USS FDR").[1]  Kochera's claims against GE fail, and this Court should enter summary judgment for GE, because (a) the undisputed evidence in the record establishes that GE manufactured and sold Navy turbines to the Navy in a "bare metal" condition, and (b) even apart from that complete

---

[1] USS FDR (CVB-42) was launched 29 April 1945 by New York Naval Shipyard and was commissioned 27 October 1945.  *Franklin D. Roosevelt (CVB-42)*, NAVAL HISTORY AND HERITAGE COMMAND, *available at* http://www.history.navy.mil/research/histories/ship-histories/danfs/f/franklin-d-roosevelt-cvb-42.html (last visited March 18, 2015).

defense, there is no evidence in the record that Kochera was exposed to any asbestos-containing product manufactured or supplied by GE. The United States District Court in Philadelphia that has presided over the massive federal asbestos MDL for almost 25 years, has granted summary judgment in dozens of essentially identical cases in recent years, and this Court should reach the same result. The grounds for this motion are detailed below.[2]

## FACTS

This asbestos case was originally filed in the Circuit Court of Madison County, Illinois in November, 2013. Kochera claimed he contracted an asbestos-related disease as a result of inhaling airborne asbestos fibers while serving aboard certain United States Navy ships as an enlisted sailor nearly six decades earlier, between 1954 and 1957. *See, e.g.*, Kochera's Answer to GE Interrogatory No. 3, attached as Exhibit A. Many of the defendants were companies from which the Navy had procured equipment for those ships pursuant to government contracts. One of those defendants, Foster Wheeler LLC, a manufacturer of naval boilers, removed the case to this Court based on the federal officer removal statute, 28 U.S.C. § 1442(a)(1). *See generally Ruppel v. CBS Corp.*, 701 F.3d 1176 (7th Cir. 2012) (approving removal on that ground).

The product on which Kochera grounds his claims against GE was described by him as follows: "General Electric turbines on the USS Franklin D. Roosevelt." Ex. A, Kochera's Answer to GE Interrogatory No. 11. After serving aboard two Navy ships following basic training, and rising from the Navy designation of "seaman recruit" to the rating of "fireman," Kochera decided he "wanted to go on the aircraft carrier," so he requested a transfer. Kochera Deposition, at 29-38, excerpts attached as Exhibit B. The Navy transferred him to the USS FDR in 1956, and he was assigned to the "ice machine room," where his duties involved maintaining

---

[2] Pursuant to SDIL-LR 7.1(c), GE combines its motion and supporting brief into this single submission.

the ship's ice machines and freezers. *Id.* at 49-50. On occasion, he would also help "do different work" in the FDR's boiler and engine rooms, but this was "not very long" because "[w]e had enough to do where we were." *Id.* at 51. When asked to elaborate on his alleged involvement with GE turbines on the FDR, as asserted in his answers to GE's interrogatories, Kochera admitted that he never performed any work "actually on a body of a turbine in the Navy." *Id.* at 124. Instead, all he could point to was that he had spent two hours replacing a leaking valve "at the end of the turbines." *Id.* at 124-126. He thought this had occurred in the FDR's number 1 engine room, but he couldn't be sure because "[t]hat was a long time ago." *Id.* at 125. Kochera readily conceded that this valve was not made by GE, but by a different company known as Crane. *Id.* at 127. A short time afterwards during the deposition, when questioned by Crane's lawyer about this valve, Kochera said of his earlier testimony: "I'm not sure what I said." *Id.* at 166. He then reversed field and effectively recanted the earlier valve testimony, testifying that he actually "didn't walk up and see" the valve at all, denied having screwed it on, denied being around when anyone else did so, and was completely unable to remember what the valve looked like. *Id.* at 166-167.

Beyond that internally conflicting testimony, when asked if he had ever seen anyone employed by GE performing work on board the USS FDR, Kochera could only testify vaguely that on one occasion he saw someone who "had a shirt on with GE on it or whatever it is, …working on a turbine, if I'm not mistaken." *Id.* at 128-129. When asked to describe this work he claimed to have seen being performed nearly six decades earlier, he could only respond with the following opaque testimony: "Well, they took the thing off the front of it, the wheel or whatever you want to call it, handle or whatever. Had that off, and that's as far as I seen what they did." *Id.* at 129. He admitted this was a only a fleeting observation: "I just walked past the

3

door and seen them." *Id.* at 131. As he explained the situation, "I didn't stay there and watch them. I just seen them doing it, and I got out of there." *Id.* at 129.[3]

Navy steam turbines are mechanical devices made of steel. Affidavit of David R. Skinner ¶2; attached as Exhibit F. Most Navy warships built since the World War II era have used steam turbines for propulsion. *Id.* Smaller steam turbines are also employed aboard Navy steam ships in the generation of shipboard electricity. *Id.* Navy turbines have been manufactured by various American companies over the decades; GE was one such company until it exited the Navy turbine business in 1996. *Id.*

The design and construction of a Navy ship is a complex process that takes years. *Id.* ¶3. To carry out this project, the Navy has its own engineers, both naval officers and civilian employees, and also engages the services of outside naval architecture firms, such as Gibbs & Cox, who collaborate to translate the concept for the new ship into a design that can be constructed by a shipyard under the Navy's direction. *Id.* The Navy, working in conjunction with the shipyard it has contracted to build the ship, then acquires from a multitude of vendors the thousands of pieces of equipment needed. *Id.* Those acquisitions are accomplished through a government contracting process. *Id.* The heart of that process is the Military Specification ("MilSpec"). *Id.* There are thousands of MilSpecs, and they specify in minute detail the Navy's requirements for shipboard equipment. *Id.* Vendors must comply with applicable MilSpecs for

---

[3] Three other former Navy sailors whom Kochera had identified as co-worker witnesses were deposed in Florida, Oregon, and Arizona. Their testimony adds nothing to the case with respect to GE. Ferrell Crowder could only say that Kochera's name "rings a bell." Crowder Deposition, at 7; excerpts attached as Exhibit C. He denied ever seeing Kochera in the FDR's engine rooms but speculated that he could have run into him in the chow line, the mess line, or the line for the ship's store. *Id.* at 155. He never witnessed Kochera working on any equipment on the FDR. *Id.* at 128-129. Douglas McWhirter testified that he did not know and could not recall Kochera. McWhirter Deposition at 15, 160; excerpts attached as Exhibit D. Lawrence Thomas Krieg testified that he did not know Kochera's name, or what he would look like, or even whether he served on the FDR. Krieg Deposition at 13-15; excerpts attached as Exhibit E. He admitted that he did not know what, if anything, Kochera did on the FDR. *Id.* at 127.

the equipment they provide, and the MilSpecs become part of the government contract for all major equipment purchases by the Navy, including steam turbines. *Id.*

The MilSpec governing Navy turbines provides, "Heat insulation and lagging will be provided by the shipbuilder." *Id.* ¶4. In compliance with this Navy specification, Navy turbines manufactured by GE did not have any heat insulation materials (whether containing asbestos or otherwise) installed on them at the time they left GE's control upon being shipped from the GE plant. *Id.* GE did not manufacture or sell Navy turbines with heat insulation. *Id.* Navy turbines manufactured by GE left the GE factory and were shipped "bare metal," meaning they had only a coat of paint on the exterior surface. *Id.* Any heat insulation materials that were applied to Navy turbines manufactured by GE would have been supplied and installed by the Navy's shipbuilder after those turbines had left GE's manufacturing plant, had been delivered to the shipyard, and had been installed aboard ship and tested. *Id.* The process may be summarized as follows: (a) a Navy turbine would be manufactured by GE in compliance with the governing MilSpecs, pursuant to a government contract; (b) that Navy turbine would leave the GE factory in a "bare metal" condition and would be shipped to the Navy's designated shipyard where the ship was to be constructed; (c) at that shipyard, the Navy turbine would be placed into storage by the shipbuilder until ship construction reached the point where it was time to install the turbine aboard ship; (d) at that point, the shipbuilder's personnel would use a crane to lift the Navy turbine into the ship's hull and install it on a foundation that had been constructed in the engine room to receive it; (e) sometime thereafter, once all the other necessary steam system components had been installed and were online, such as boilers, condensers, and piping, the turbine would be tested by the shipbuilder; and (f) sometime after that, assuming the test of all systems was satisfactory, heat insulation materials would be applied to certain components of the

turbine, as well as to numerous other pieces of equipment and piping systems throughout the engine room. *Id.* The nature of those heat insulation materials would be specified by the Navy to its shipbuilder through a set of MilSpecs governing such materials. *Id.* Those heat insulation materials would be supplied by the Navy's shipbuilder in compliance with those MilSpecs, and the application of those materials would be carried out by the Navy's shipbuilder's personnel. *Id.* GE was not involved in this process of supplying and installing heat insulation materials. *Id.*

## ARGUMENT

### I. Summary Judgment Standard

The Seventh Circuit has noted for many years that summary judgment "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Oates v. Discovery Zone*, 116 F.3d 1161, 1175 (7th Cir. 1997). Summary judgment "is designed to head off a trial if the opposing party does not have a reasonable prospect of prevailing before a reasonable jury—that is, a jury that will base its decision on facts and the law, rather than on sympathy or antipathy or private notions of justice." *Karazanos v. Navistar Intern. Trans. Corp.*, 948 F.2d 332, 338 (7th Cir. 1991) (internal quotation marks omitted).

The procedure is straightforward. As the Supreme Court held almost 30 years ago in *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986), an asbestos exposure case, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." The Court held that such a "showing" does not "mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact." *Id.* Rather, a party seeking summary judgment simply "bears the initial responsibility of informing the District

Court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The burden then shifts to the nonmoving party "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. If the nonmoving party fails to do so, "Rule 56(c) *mandates* the entry of summary judgment." *Id.* (emphasis added).

More recently, the Seventh Circuit explained this summary judgment procedure in the following terms:

> Summary judgment is the "put up or shut up" moment in a lawsuit. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003), *reh'g denied*. Once a party has made a properly-supported motion for summary judgment, the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive a summary judgment motion; there must be evidence on which the jury could reasonably find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

*Siegel v. Shell Oil Co.*, 612 F.3d 932 (7th Cir. 2010).[4] This means that while the admissible evidence in the record is viewed in the light most favorable to the nonmoving party, a court's "favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012) (internal quotation marks omitted). Moreover, "[n]ot all disputes of fact preclude

---

[4] Another cogent description of summary judgment procedure by Chief Judge Herndon of this district may be found in *Enbridge Pipelines (Illinois) LLC v. Burris*, No. 08-CV-697-DRH, 2010 WL 1416019, at *3-4 (S.D. Ill. Mar. 31, 2010) *aff'd sub nom. Enbridge Pipelines (Illinois) L.L.C. v. Moore*, 633 F.3d 602 (7th Cir. 2011).

summary judgment. Such factual disputes must be both material *and* genuine. The underlying substantive law governs whether a factual dispute is material: irrelevant or unnecessary factual disputes do not preclude summary judgment." *Carroll v. Merrill Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (internal quotation marks and citation excluded, emphasis in original).[5]

## II. GE Is Entitled To Summary Judgment

Kochera's case against GE fails at every level. First, there is no evidence that GE manufactured or supplied any asbestos-containing products, and GE cannot be held liable for alleged exposure to asbestos-containing products made by *other* companies and applied to GE's bare metal equipment (the "bare metal" defense). Second, Kochera cannot establish causation because there is insufficient evidence that he worked on or near GE turbines or equipment.

### A. Maritime Law Applies Because Kochera Alleges Sea-Based Exposure

The question of what substantive law applies in cases involving exposure aboard a ship has been dealt with numerous times in recent years by the court presiding over the longstanding federal asbestos MDL (the "MDL Court").[6] In each case, after thorough analysis, the answer has been maritime law. *E.g., Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 459, 466-69 (E.D. Pa. 2011) (holding that maritime law applies to cases involving "Navy sailors who spent the bulk of their time sailing on navigable waters"); *Devries v. Gen. Elec. Co.*, No. 5:13-00474-ER, 2014 WL 6746960, at *1 (E.D. Pa. Oct. 3, 2014), *appeal docketed,* No. 15-1278 (3d Cir. Feb. 12, 2015); *Carper v. Gen. Elec. Co.*, No. 2:12-06164-ER, 2014 WL 6736158, at *1 (E.D. Pa. Sept. 4,

---

[5] *See also Williams v. Damona-Cuff*, No. 3:12-CV-1208-SMY-PMF, 2015 WL 361287, at *1 (S.D. Ill. Jan. 28, 2015) ("'A genuine issue of material fact is not demonstrated by the mere existence of some alleged factual dispute between the parties,' *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by 'some metaphysical doubt as to the material facts'").

[6] "For approximately two decades, all asbestos-related personal injury and wrongful death actions were consolidated in the Eastern District of Pennsylvania as MDL No. 875 (the 'MDL Court'). Judge Eduardo Robreno has presided over MDL No. 875 since 2008." *Joyner v. A.C. & R. Insulation Co.*, 2013 WL 877125, at *4 n. 6 (D. Md. Mar. 7, 2013).

2014), *appeal dismissed,* No. 14-4155 (3d Cir. March 10, 2015); *Kelly v. CBS Corp.*, No. 11-03240, 2014 WL 6735103, at *1 (E.D. Pa. Aug. 18, 2014); *Hilt v. Foster Wheeler LLC*, No. 11-02367, 2014 WL 345222, at *1 (E.D. Pa. Jan. 29, 2014); *Leonard v. CBS Corp.*, No. 12-00714, 2014 WL 345216, at *1 (E.D. Pa. Jan. 29, 2014); *Mullis v. Armstrong Int'l, Inc.*, No. 12-00459, 2013 WL 5548902, at *1 (E.D. Pa. Sept. 18, 2013); *Case v. Am. Standard, Inc.*, No. 11-04164, 2013 WL 5548804, at *1 (E.D. Pa. July 31, 2013); *Doucet v. Asbestos Corp.*, No. 11-05845, 2013 WL 5547847, at *1 (E.D. Pa. May 28, 2013); *La Fauci v. 3M Co.*, No. 11-03507, 2013 WL 5544373, at *1 (E.D. Pa. May 13, 2013); *Donn v. A.W. Chesterton Co.*, No. 10-00311, 2013 WL 2477049, at *1 (E.D. Pa. May 9, 2013); *Hall v. A.W. Chesterton Co.*, No. 11-03400, 2013 WL 2477152, at *1 (E.D. Pa. May 7, 2013); *Bolton v. Air & Liquid Sys. Corp.*, No. 12-00723, 2013 WL 2477185, at *1 (E.D. Pa. Apr. 30, 2013); *Mack v. Gen. Elec. Co.*, 896 F. Supp. 2d 333, 337-38 (E.D. Pa. 2012); *Conroy v. A.W. Chesterton Co.*, No. 11-05457, 2012 WL 5458119, at *1 (E.D. Pa. Oct. 26, 2012); *Dupre v. Eagle, Inc.*, No. 11-02097, 2012 WL 5395226, at *1 (E.D. Pa. Oct. 2, 2012); *Hughes v. Foster Wheeler, LLC*, No. 5:11-01129-ER, 2012 WL 2914276, at *1 (E.D. Pa. June 6, 2012); *Floyd v. Air & Liquid Sys. Corp.*, No. 10-01960, 2012 WL 975665, at *1 (E.D. Pa. Feb. 9, 2012); *Delatte v. Chesterton*, No. 08-00206, 2011 WL 4907772, at *1 (E.D. Pa. Feb. 28, 2011). There is no need for this Court to reinvent the wheel. That extensive body of MDL decisions should be viewed by this Court as highly persuasive.[7]

The MDL Court has held that maritime law governs even when a sailor is exposed to

---

[7] When the Judicial Panel on Multidistrict Litigation discontinued the transfer of new asbestos cases to MDL No. 875, it noted that district courts presiding over asbestos cases "will almost certainly find useful guidance in the many substantive and thoughtful rulings that have been issued during the lengthy course of multidistrict proceedings," specifically referencing the *Conner* decision, *inter alia*, on the application of maritime law. *See In Re Asbestos Prods. Liab. Litig. (No. VI)*, 830 F. Supp. 2d 1377, 1379 *n.5 (JPML 2011).

asbestos on a ship in dry dock for an overhaul. *Deuber v. Asbestos Corp. Ltd.*, No. 10-78931, 2011 WL 6415339 at *1 n.1 (E.D. Pa. Dec. 2, 2011). According to the MDL Court, work performed on a "ship docked at the shipyard, and…those in 'dry dock'" qualifies as work on a ship on navigable waters for purposes of applying maritime law. *Filer v. Foster Wheeler LLC*, 994 F. Supp. 2d 679, (E.D. Pa. 2014). Other courts have reached the same result. *E.g., Cabasug v. Crane Co.*, 956 F. Supp. 2d 1178, 1187-90 (D. Haw. 2013) ("It is well-settled that vessels in drydock are still considered to be in 'navigable waters' for purposes of admiralty jurisdiction."); *Sisson v. Ruby*, 497 U.S. 358, 366 (1990) (maritime jurisdiction found where damage resulted from a vessel docked at a marina); *Alderman v. Pacific N. Victor, Inc.*, 95 F.3d 1061, 1065 (11th Cir. 1996) (maritime law applied to injuries from conversion of a ship while docked); *Sea Vessel, Inc. v. Reyes*, 23 F.3d 345, 349 (11th Cir. 1994) (vessel that was dry-docked was "in or on navigable waters" for purposes of maritime law analysis); *Guillotte v. Energy Partners, Ltd.*, No. G-06-0671, 2008 WL 828052 at *5-9 (S.D. Tex. Mar. 26, 2008) (applying maritime law where ship was jacked up over water for an overhaul).

In this case, Kochera was a Navy sailor who sustained his alleged exposure to asbestos aboard Navy warships, while working on shipboard equipment, both at sea and during at least a portion of his service on the USS FDR, while the Navy had that ship in dry dock for maintenance. Under the unbroken line of cases cited above, it is beyond dispute that maritime law governs Kochera's claims.

### B. The Bare Metal Defense Applies And GE Is Not Liable For Exposure To Products That It Did Not Manufacture Or Supply

Even assuming that Kochera can establish that he worked on or near Navy turbines manufactured by GE—which he cannot, *see infra* Section II.C—GE is not liable because GE did not manufacture or supply any asbestos-containing products or insulation related to those Navy

10

turbines. As discussed above, and as explained in detail in the Skinner Affidavit, Ex. F, it is undisputed that GE sold "bare metal" steam turbines to the Navy for installation aboard USS FDR. They left the GE factory and arrived at the Navy's shipyard (the New York Naval Shipyard) with only a coat of paint. To the extent any heat insulation material was later applied to those turbines after installation, those materials (whether containing asbestos or not) were supplied and installed by the Navy's shipbuilder pursuant to its contract with the Navy and the Navy MilSpecs for heat insulation that were incorporated into that contract. GE was not involved.

Maritime law recognizes the bare metal defense, under which "a defendant is only legally responsible for component parts which it manufactured or distributed…. [A] defendant is not responsible for injuries caused by component parts it neither manufactured or distributed." *DeLatte*, 2011 WL 4907772, at *1; *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801-03 (E.D. Pa. 2012) ("[U]nder maritime law, a manufacturer is not liable for harm caused by, and owes no duty to warn of the hazards inherent in, asbestos products that the manufacturer did not manufacture or distribute."). The MDL Court has regularly granted summary judgment to GE, and similarly situated Navy equipment vendors, when a plaintiff alleges exposure to asbestos-containing products, such as heat insulation, that were manufactured or supplied by other companies. *E.g.*, *Festa v. Worthington Pumps, Inc.*, No. 2:13-06138-ER, 2014 WL 6746842, at *1 (E.D. Pa. Oct. 10, 2014) ("Plaintiff concedes that he is not able to establish that GE was a manufacturer or supplier of any of the component parts at issue, and instead contends that the Court should abandon or modify the so-called 'bare metal defense' that currently exists under maritime law. The Court declines to do so."); *Deuber v. Asbestos Corp.*, No. 10-02686, 2012 WL 7761244, at *1 (E.D. Pa. Oct. 15, 2012) ("[I]n light of this Court's ruling in *Conner*, GE cannot

be liable for any asbestos products/parts that it did not manufacture or supply."); *Constantine v. Gen. Elec. Co.*, No. 2:12-04030-ER, 2014 WL 6735527, at *1 (E.D. Pa. Aug. 26, 2014), *appeal dismissed,* No. 14-4156 (3d Cir. March 11, 2015) ("With respect to asbestos-containing products (or component parts) to which Plaintiff may have been exposed in connection with GE equipment, but which were not manufactured or supplied by Defendant GE, the Court has held that, under maritime law, Defendant cannot be liable."); *Holmes v. A.W. Chesterton Co.*, No. 09-00678, 2012 WL 2913783, at *1 (E.D. Pa. May 24, 2012) (similar); *Hays v. A.W. Chesterton, Inc.*, No. 09-81881, 2012 WL 3096534, at *1 (E.D. Pa. Apr. 19, 2012) (similar); *Floyd v. Air & Liquid Sys. Corp.*, No. 10-01960, 2012 WL 975088, at *1 (E.D. Pa. Feb. 7, 2012) (similar); *Wingfield v. Georgia Pac. Corp.*, No. 07-2175, 2012 WL 7760174, at *1 (E.D. Pa. Nov. 7, 2012) (granting summary judgment to GE because "Plaintiff has produced no evidence that GE manufactured or supplied any asbestos-containing product or component part from which he was exposed to asbestos", and "[t]his Court has previously held that, under maritime law, a defendant cannot be liable for—and has no duty to warn about—injury arising from any product or component part that it did not manufacture or supply").

These decisions of the MDL Court are in accord with the overwhelming weight of legal authority. "The majority of courts embrace the principles of the bare metal defense and refuse to impose liability upon manufacturers for the dangers associated with asbestos-containing products manufactured and distributed by other entities." *Dalton v. 3M Co.*, No. 10-113-SLR-SRF, 2013 WL 4886658, at *10 (D. Del. Sept. 12, 2013), *report and recommendation adopted,* 2013 WL 5486813 (D. Del. Oct. 1, 2013).[8] Indeed, courts have almost uniformly declined to impose

---

[8] *See Braaten v. Saberhagen Holdings*, 198 P.3d 493, 498 (Wash. 2008); *In re Asbestos Litig.* (*Arland Olson*), 2011 WL 322674, at *2 (Del. Super. Ct. New Castle Cnty. Jan. 18, 2011) (following "the persuasive weight of decisions from other jurisdictions declining to impose a duty" where the defendant failed to warn or protect against hazards arising from a product it did not manufacture, distribute, or sell, "even if the defendant's product incorporated

12

failure-to-warn liability on third parties who did not manufacture the asbestos-containing material at issue, including many courts perceived to be favorable to plaintiffs. These courts include the Supreme Courts of California[9] and Washington;[10] appellate courts in Georgia,[11] Maryland,[12] Massachusetts,[13] New Jersey (on causation grounds),[14] and Pennsylvania;[15] and state

---

component parts that posed similar risks and would require replacement."); *Morgan v. Bill Vann Co., Inc.*, 969 F. Supp. 2d 1358, 1366-67 (S.D. Ala. 2013) (stating "the prevailing majority rule in other jurisdictions is to recognize the 'bare metal defense'"); Mark A. Behrens & Margaret Horn, *Liability for Asbestos-Containing Connected or Replacement Parts Made by Third Parties: Courts Are Properly Rejecting this Form of Guilt by Association*, 37 Am. J. Trial Advoc. 489 499 (2014).

[9] *See O'Neil v. Crane Co.*, 266 P.3d 987, 1005 (Cal. 2012); *see also Paulus v. Crane Co.*, 169 Cal. Rptr. 3d 373, 378-79 (Ct. App. 2014); *Lee v. Clark Reliance Corp.*, 2013 WL 3677250, at *6 (Cal. Ct. App. July 15, 2013); *Brewer v. Crane Co.*, 2012 WL 3126523, at *8 (Cal. Ct. App. Aug. 2, 2012); *Nolen v. Foster Wheeler Energy Corp.*, 2012 WL 3126765, at *4 (Cal. Ct. App. Aug. 2, 2012). For pre-*O'Neil* decisions rejecting asbestos third-party duty-to-warn claims, *see Cullen v. Indus. Holdings Corp.*, 2002 WL 31630885, at *7 (Cal. Ct. App. Nov. 21, 2002); *Taylor v. Elliott Turbomachinery Co., Inc.*, 90 Cal. Rptr. 3d 414, 418 (Ct. App. 2009); *Hall v. Warren Pumps, LLC*, 2010 WL 528489, at *9 (Cal. Ct. App. Feb. 16, 2010); *Merrill v. Leslie Controls, Inc.*, 101 Cal. Rptr. 3d 614, 617 (Ct. App. 2009); *Walton v. The William Powell Co.*, 108 Cal. Rptr. 3d 412, 415 (Ct. App. 2010); *Petros v. 3M Co.*, 2009 WL 6390885, at *1 (Cal. Super. Ct. Alameda Cnty. Sept. 30, 2009); *Woodard v. Crane Co.*, 2011 WL 3759923, at *3 (Cal. Ct. App. Aug. 25, 2011).

[10] *See Simonetta v. Viad Corp.*, 197 P.3d 127, 138 (Wash. 2008); *Braaten v. Saberhagen Holdings*, 198 P.3d 493, 504 (Wash. 2008); *see also Yankee v. APV N. Am., Inc.*, 262 P.3d 515, 520-21 (Wash. Ct. App. 2011); *Wangen v. A.W. Chesterton Co.*, 2011 WL 3443962, at *7 (Wash. Ct. App. Aug. 8, 2011); *Anderson v. Asbestos Corp.*, 2009 WL 2032332, at *2 (Wash. Ct. App. July 13, 2009).

[11] *See Toole v. Georgia-Pacific, LLC*, 2011 WL 7938847, at *7 (Ga. App. 2011); *Reed v. Am. Steel & Wire Co.*, 2014 WL 3674678, at *2 (Ga. Super. Ct. Chatham Cnty. July 21, 2014).

[12] *See May v. Air & Liquid Sys. Corp.*, 2014 WL 4958163, *1 (Md. Ct. Spec. App. Oct. 3, 2014); *Ford Motor Co. v. Wood*, 703 A.2d 1315, 1331 (Md. Ct. Spec. App.), *cert. denied*, 709 A.2d 139 (Md. 1998), *abrogated on other grounds*, *John Crane, Inc. v. Scribner*, 800 A.2d 727 (Md. 2002); *see also In re Asbestos Litig.* (*Thomas Milstead*), 2012 WL 1996533, at *2 (Del. Super. Ct. New Castle Cnty. June 1, 2012) (applying Maryland law).

[13] *See Whiting v. CBS Corp.*, 2013 WL 530860, at *1, 982 N.E.2d 1224 (Table) (Mass. Ct. App. 2013); *Dombrowski v. Alfa Laval, Inc.*, 2010 WL 4168848, at *1 (Mass. Super. Middlesex Cnty. July 1, 2010) (quoting *Mitchell v. Sky Climber, Inc.*, 487 N.E.2d 1374, 1376 (Mass. 1986)); *see also In re Asbestos Litig.* (*Anita Cosner*), 2012 WL 1694442, at *1 (Del. Super. Ct. New Castle Cnty. May 14, 2012) (applying Mass. law) (citing *Dombrowski*).

[14] *See Hughes v. A. W. Chesterton Co.*, 89 A.3d 179, 190 (N.J. Super. A.D. 2014); *see also Robinson v. Air & Liquid Sys. Corp.*, 2014 WL 3673030, at *1 (D.N.J. July 23, 2014).

[15] *See Schaffner v. Aesys Tech., LLC*, 2010 WL 605275, at *6 (Pa. Super. Jan. 21, 2010); *see also Montoney v. Cleaver-Brooks, Inc.*, 2012 WL 359523 (Pa. Com. Pl. Phila. Cnty. Jan. 5, 2012); *Kolar v. Buffalo Pumps, Inc.*, 15 Pa. D. & C. 5th 38, 45-46 (Pa. Com. Pl. Phila. Cnty. Aug. 2, 2010); *Ottinger v. Am. Standard, Inc.*, 2007 WL 7306556 (Pa. Com. Pl. Phila. Cnty. Sept. 11, 2007); *cf. Eckenrod v. GAF Corp.*, 544 A.2d 50, 52 (Pa. Super.) ("a plaintiff must present evidence to show that he inhaled asbestos fibers shed by the specific manufacturer's

trial courts in Connecticut,[16] Delaware (applying the law of Delaware and numerous other states),[17] Maine,[18] Minnesota,[19] Ohio,[20] and Texas.[21] Federal courts applying Alabama,[22] California,[23] Florida,[24] Illinois,[25] Mississippi,[26] and North Carolina[27] law have also rejected third-

---

product."), *appeal denied*, 553 A.2d 969 (Pa. 1988).

[16] *See Abate v. AAF-McQuay, Inc.*, 2013 WL 812066, at *5 (Conn. Super. Ct. Fairfield Cnty. Jan. 29, 2013), *reconsideration denied,* 2013 WL 5663462, at *5 (Conn. Super. Ct. Sept. 24, 2013); *see also In re Asbestos Litig.* (*Irene Taska*), 2011 WL 379327, at *1 (Del. Super. Ct. New Castle Cnty. Jan. 19, 2011) (applying Conn. law); *In re Asbestos Litig.* (*Frederick and Patricia Parente*), 2012 WL 1415709, at *2 (Del. Super. Ct. New Castle Cnty. Mar. 2, 2012) (applying Conn. law).

[17] *See Farrall v. Ford Motor Co.*, 2013 WL 4493568, at *1 n.5 (Del. Super. Ct. New Castle Cnty. Aug. 19, 2013); *In re Asbestos Litig.*, 2011 WL 5340597, at *3 (Del. Super. Ct. New Castle Cnty. Oct. 5, 2011); *Bernhardt v. Ford Motor Co.*, 2010 WL 3005580, at *2 (Del. Super. Ct. New Castle Cnty. July 30, 2010); *Wilkerson v. Am. Honda Motor Co., Inc.*, 2008 WL 162522, at *2 (Del. Super. Ct. New Castle Cnty. Jan. 17, 2008); *In re Asbestos Litig.* (*James Petroski*), No. N10C-11-139 ASB (Del. Super. Ct. New Castle Cnty. June 27, 2012) (applying Ariz. law); *In re Asbestos Litig.* (*Irene Taska*), 2011 WL 379327, at *1 (Del. Super. Ct. New Castle Cnty. Jan. 19, 2011) (applying Conn. law); *In re Asbestos Litig.* (*Frederick and Patricia Parente*), 2012 WL 1415709, at *2 (Del. Super. Ct. New Castle Cnty. Mar. 2, 2012) (applying Conn. law); *In re Asbestos Litig.* (*Arland Olson*), 2011 WL 322674, at *2 (Del. Super. Ct. New Castle Cnty. Jan. 18, 2011) (applying Idaho law); *In re Asbestos Litig.* (*Thomas Milstead*), 2012 WL 1996533, at *2 (Del. Super. Ct. New Castle Cnty. June 1, 2012) (applying Md. law); *In re Asbestos Litig.* (*Anita Cosner*), 2012 WL 1694442, at *1 (Del. Super. Ct. New Castle Cnty. May 14, 2012) (applying Mass. law); *In re Asbestos Litig.* (*Ralph Curtis and Janice Wolfe*), 2012 WL 1415706, at *5 (Del. Super. Ct. New Castle Cnty. Feb. 28, 2012) (applying Or. law); *In re Asbestos Litig.* (*Reed Grgich*), 2012 WL 1408982, at *4 (Del. Super. Ct. New Castle Cnty. Apr. 2, 2012) (applying Utah law), *reargument denied,* 2012 WL 1593123 (Del. Super. Ct. New Castle Cnty. Apr. 11, 2012), *appeal refused sub nom. Crane Co. v. Grgich*, 44 A.3d 921 (Del. Super. Ct. New Castle Cnty. 2012).

[18] *See Rumery v. Garlock Sealing Tech., Inc.*, 2009 WL 1747857, at *1 (Me. Super. Ct. Cumberland Cnty. Apr. 24, 2009); *Richards v. Armstrong Int'l, Inc.*, 2013 WL 1845826, at *21, 25-26 (Me. B.C.D. Cumberland Cnty. Jan. 25, 2013).

[19] *See Nelson v. 3M Co.*, 2011 WL 3983257 (Minn. 2d Dist. Ct. Ramsey Cnty. Aug. 16, 2011); *see also McGuire v. Honeywell, Int'l, Inc.*, No. 62-CV-09-10102 (Minn. 2d Dist. Ct. Ramsey Cnty. Aug. 10, 2010) (cited in James K. Toohey & Rebecca L. Matthews, *Liability for the Post-Sale Installation of Asbestos-Containing Replacement Parts or Insulation*, 25:21 Mealey's Litig. Rep.: Asbestos 20 n.82 (Dec. 1, 2010)).

[20] *See Alexander v. A. W. Chesterton Co.*, No. 12-776463, slip op. at 4 (Ohio Ct. Com. Pl. Cuyahoga Cnty. Mar. 7, 2014); *Roberts v. Adience, Inc.*, No. 04-523152, slip op. at 4 (Ohio Ct. Com. Pl. Cuyahoga Cnty. Mar. 7, 2014).

[21] *See Nolen v. A. W. Chesterton Co.*, 2004 WL 5047437, at *1 (Tex. Dist. Ct. 153d Jud. Dist. Tarrant Cnty. July 26, 2004); *Nolen v. A. W. Chesterton Co.*, 2004 WL 5047438, at *1 (Tex. Dist. Ct. 153d Jud. Dist. Tarrant Cnty. Aug. 11, 2004).

[22] *See Morgan v. Bill Vann Co., Inc.*, 969 F. Supp. 2d 1358, 1366-67 (S.D. Ala. 2013).

[23] *See Olds v. 3M Co.*, 2013 WL 5675509, at *1 (C.D. Cal. Oct. 16, 2013); *McNaughton v. Gen. Elec. Co.*, 2012 WL 5395008, at *1 (E.D. Pa. Aug. 9, 2012); *Floyd v. Air & Liquid Sys. Corp.*, 2012 WL 975359 (E.D. Pa. Feb. 8, 2012).

party duty-to-warn claims in the asbestos context.

Given the uniform authority on this point, coupled with the undisputed evidence that GE did not manufacture or supply heat insulation or any other asbestos-containing materials on the Navy turbines manufactured by GE that were installed aboard the USS FDR, GE is entitled to summary judgment.

### C. Kochera Cannot Establish Causation Because There Is Insufficient Evidence That He Worked On Or Around GE Turbines Or Equipment.

Even if the bare metal defense were somehow found inapplicable here, against this enormous weight of authority and the undisputed facts in the record, GE *still* is not liable because Kochera cannot establish causation. The MDL Court and other federal courts have repeatedly held that to establish causation in an asbestos case under maritime law, the plaintiff must show that (1) he was exposed to a defendant's product, and (2) the product was a *substantial factor* in causing his alleged injury. *Abbay v. Armstrong International, Inc.*, 2012 WL 975837 (E.D. Pa. 2012) (emphasis added) (citing *Lindstrom*, 424 F.3d at 492; *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)). It is also necessary that a plaintiff show that the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged. *Abbay*, 2012 WL 975837 at *5; *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801-03; Section II.B, *supra* (collecting cases demonstrating that the overwhelming weight of authority applies the bare metal defense).

---

[24] *See Faddish v. Buffalo Pumps*, 881 F. Supp. 2d 1361, 1374 (S.D. Fla. 2012).

[25] *See Harris v. Ajax Boiler, Inc.*, 2014 WL 3101941, at *5-6 (W.D.N.C. July 7, 2014).

[26] *See Dalton v. 3M Co.*, 2013 WL 4886658, at *10 (D. Del. Sept. 12, 2013) (applying Miss. law), *report and recommendation adopted,* 2013 WL 5486813 (D. Del. Oct. 1, 2013).

[27] *See Harris v. Ajax Boiler, Inc.*, 2014 WL 3101941, at *5-6 (W.D.N.C. July 7, 2014).

A mere "minimal exposure" to a defendant's product is insufficient to establish causation. *Lindstrom*, 424 F.3d at 492. "Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Id*. Rather, the plaintiff must show "a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Id*. (quoting *Harbour v. Armstrong World Industries*, 932 F.2d 968 (E.D. Mich. 1991)); *Festa*, 2014 WL 6746842, at *1; *Deuber*, 2012 WL 7761244, at *1; *Constantine*, 2014 WL 6735527, at *1. The exposure must have been "actual" or "real." *Abbay*, 2012 WL 975837 at *6 (citing *Redland Soccer Club, Inc. v. Dept. of Army of U.S.*, 55 F.3d 827, 851 (3d Cir. 1995)). "Total failure to show that the defect caused or contributed to the accident will foreclose as a matter of law a finding of strict product liability." *Stark*, 21 F.App'x at 376 (citing *Matthews v. Hyster Co., Inc.*, 854 F.2d 1166, 1168 (9th Cir. 1988) (citing Restatement (Second) of Torts, § 402A (1965))).

Accordingly, the MDL Court has repeatedly granted summary judgment to defendants when the plaintiff failed to demonstrate more than minimal or conjectural exposure, or where the plaintiff merely demonstrated that "defendant's product was present somewhere at plaintiff's place of work." *See Constantine*, 2014 WL 6735527, at *1 (granting summary judgment to GE because "no reasonable jury could conclude from the evidence that Decedent was exposed to asbestos from a product manufactured or supplied by GE such that it was a substantial factor in the development of his lung cancer, because any such finding would be impermissibly conjectural"); *Holmes*, 2012 WL 2913783, at *1 (similar); *Hays v. A.W. Chesterton, Inc.*, 2012 WL 3096534, at *1 (similar); *Serini v. A.W. Chesterton Co.*, No. 05-4038, 2012 WL 2914188, at *1 (E.D. Pa. May 14, 2012) (similar; granting summary judgment to Crane Co.); *Mortimer v. A.O. Smith Corp.*, No. CIV.A. 2:13-04169-ER, 2014 WL 7649080, at *1 (E.D. Pa. Dec. 18,

2014) (similar; granting summary judgment to IMO Industries, Inc.).

In this case, Kochera's internally conflicting evidence establishes at most that he may have participated—or, by his own subsequent sworn testimony within the same deposition, definitely *did not* participate—for two hours in replacing a valve manufactured by Crane "at the end of the turbines" in one of the engine rooms on the USS FDR more than half a century ago. Ex. B, Kochera Dep., at 124-126. There is no evidence that the valve was part of any GE turbine or was manufactured by GE. To the contrary, Kochera himself said it was made by *Crane*. *Id.* at 127. There is no evidence that the valve was insulated at all, much less that it was insulated with any asbestos-containing material. If it was insulated, there is no evidence that GE manufactured or supplied the insulation. Finally, even if Kochera's later sworn denial of having worked on the valve were to be disbelieved, there is no evidence that Kochera had any contact whatsoever with any insulation material that may have been present on the valve. All of these numerous evidentiary gaps constitute, both individually and as a whole, an utter failure of proof as to any possible claim against GE. On this barren factual record, no rational jury could return a verdict against GE. Summary judgment is therefore required.

Kochera's claims against GE go downhill from there. He said that on another occasion he happened to be walking past the door to one of the engine rooms on the USS FDR and saw someone allegedly wearing a shirt "with GE on it or whatever it is, …working on a turbine, *if I'm not mistaken.*" *Id.* at 128-129 (emphasis added). He made it plain that this was only a fleeting glimpse of work being performed by others: "I just walked past the door and seen them…I didn't stay there and watch them. I just seen them doing it, and I got out of there." *Id.* at 129-131. His vague description of what he might have seen *other* men doing is meaningless, and certainly does not involve the handling of any asbestos-containing materials: "Well, they

took the thing off the front of it, the wheel or whatever you want to call it, handle or whatever. Had that off, and that's as far as I seen what they did." *Id.* at 129. This testimony *at best* establishes that Kochera may have had a passing glance, while walking past the door of a room, of men performing an unknown task that he could not meaningfully describe, involving a device that might (or might not) have been a Navy turbine (assuming he was not mistaken, as he tacitly admitted he might have been) that might (or might not) have been manufactured by GE many years earlier when the USS FDR was built by the Navy. Such testimony could not possibly support a jury verdict that Kochera was exposed in any fashion to asbestos-containing materials manufactured or supplied by GE. Indeed, even if there were evidence in the record sufficient to identify the presence of any such materials during this episode, Kochera's own testimony establishes that he hurriedly passed the doorway, quickly glanced inside, and then immediately moved on without staying to "watch them." This testimony affirmatively precludes any possibility of the requisite "substantial" exposure to such materials. At the very most, this testimony from Kochera himself establishes that there would have been only the "minimal exposure" that *Lindstrom* and other cases hold insufficient to establish causation. Accordingly, GE is entitled to summary judgment for lack of requisite proof of causation.

## **CONCLUSION**

WHEREFORE, Defendant General Electric Company requests that this Court enter an order granting its Motion for Summary Judgment in favor of GE and against Plaintiff Andrew V. Kochera, Jr. on all claims against GE.

ARMSTRONG TEASDALE LLP

BY: */s/ Raymond R. Fournie*
    Raymond R. Fournie    #03126094
    Anita M. Kidd    #6229585
    Melanie R. King    #6192411
    Julie Fix Meyer    #6189064
    7700 Forsyth Blvd., Suite 1800
    St. Louis, Missouri 63105
    314.621.5070
    314.621.5065 (facsimile)
    rfournie@armstrongteasdale.com
    akidd@armstrongteasdale.com
    mking@armstrongteasdale.com
    jfixmeyer@armstrongteasdale.com

ATTORNEYS FOR DEFENDANT
GENERAL ELECTRIC COMPANY

**CERTIFICATE OF SERVICE**

The undersigned certifies that on the 1st day of April, 2015, this document was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                */s/ Raymond R. Fournie*