IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREW V. KOCHERA, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No.  3:14-cv-00029-SMY-SCW |
| ) | |
| FOSTER WHEELER, LLC, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**GENERAL ELECTRIC COMPANY'S
MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF
MATTHEW A. VUSKOVICH, M.D., M.S.P.H.**

Defendant General Electric Company ("GE") hereby moves this Court to exclude the testimony of Plaintiff's expert Matthew A. Vuskovich, M.D., M.S.P.H.

**MEMORANDUM OF LAW**

Andrew V. Kochera, Jr, ("Kochera"), has brought this cause of action seeking to recover for injuries related to his alleged exposure to asbestos-containing products.  With respect to Defendant GE, Plaintiff alleges that he was exposed to asbestos-containing products while he served in the Navy aboard the U.S.S. Franklin D. Roosevelt (CV-42)( "USS FDR").[1]  Plaintiff does not claim that he ever worked on any GE turbine, or any other GE product, but claims that he was exposed to asbestos-containing products when he was around others working on those products (See, generally, Doc. 204, GE's Motion for Summary Judgment).  Plaintiff was a machinist's mate in the Navy. *Id.*  Plaintiff has tendered, as an expert, Dr. Matthew A. Vuskovich.  His testimony is not reliable and should be excluded under *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1993)

---

[1] Plaintiff also served aboard other ships, but has offered no evidence linking any exposure while on any other Navy ship to any GE product or equipment.

Dr. Vuskovich is a medical doctor with a specialty in Occupational Medicine. Dr. Vuskovich has been identified by Plaintiff as an expert in this matter, and he has provided an initial report in support of Plaintiff's claims. (See May 18, 2013 letter attached hereto as Exhibit "A"), an undated B-Read with a radiograph date of `October 28, 2010 (attached hereto as Exhibit "B"); and an undated Rule 26 report (attached hereto as Exhibit "C"). Dr. Vuskovich is expected to testify at trial that Plaintiff has asbestosis as a result of his exposure to asbestos.

The testimony and reports of Dr. Vuskovich should be excluded in this matter because: (1) Dr. Vuskovich is not qualified to render an expert opinion; (2) Dr. Vuskovich's opinions are based on insufficient and incomplete information and therefore are not reliable; and (3) Dr. Vuskovich's theories of exposure as they relate to disease are unreliable.

## BACKGROUND

Dr.Vuskovich issued a two-page document addressed to Plaintiff's counsel, Ben A. Vinson, Jr., Esq., dated May 18, 2013, which opines, in part: "Considering his military service and history and his x-ray image appearances, Mr. Kochera has asbestosis." (See, Ex. A, p. 2). In conjunction with this letter, Dr. Vuskovich created a document dated October 28, 2010, entitled "Roentogenographic Interpretation, Type of Reading" with the box "B" checked (Ex. B). This document, more commonly referred to as a "B-Read," includes a profusion reading of 2/1." (Ex. B, p. 1).

The relevant portions of Dr. Vuskovich's CV (attached hereto as Exhibit "D") indicate that he graduated from medical school in 1969, passed his B-Read exam in 1990; and, since the 1980s, has primarily conducted black lung evaluations for litigation purposes (*See,* generally, Exhibit D). He received his Master of Science in Public Health from University of South Florida in 1998 (*See,* generally, Exhibit D). Dr. Vuskovich has worked for almost exclusively for

plaintiff's lawyers since 2006 reviewing asbestosis cases.  (Deposition of Matthew A. Vuskovich, October 27, 2014, attached hereto as Exhibit "E", in excerpts, p. 15, lns. 7-9).

Dr. Vuskovich acknowledged at his deposition that he is not a radiologist or pulmonologist (Exhibit E, p. 12, lns. 7-13).  He has not published anything in the medical literature on "asbestos or asbestos-related disease. . ." (*Id*. p. 22, lns. 17-20).  He is not trained to read CT scans (*Id.* p. 126, lns. 11-16).  He further admitted that he finds approximately 80% of his asbestos readings for plaintiff's counsel to be positive for an asbestos related disease. (*Id*. p. 26, lns. 3-15).

Dr. Vuskovich testified that in a typical case referral he receives x-rays from plaintiff's attorneys with a letter authored by plaintiff's counsel containing information listing claimed exposure sites and products (*Id*. p. 29, lns. 15-21).  He does not take any x-rays, nor does he compare prior x-rays taken of the plaintiff, he simply relies on the x-ray provided by plaintiff's counsel. (*Id.* pp. 29-32).  He, in fact, testified that he does his examinations of plaintiffs at his home, in hotels rooms and in meeting rooms. (*Id.* pp. 33-34).  Then, armed only with the background letter from the attorney and the x-ray of the patient, he qualifies the film and does a B-Read which he sends back to the attorney.  (*Id.* p. 31, lns. 1-24; p. 35, lns. 1-10).  He will schedule an evaluation if his reading is positive, which occurs 80% of the time.  (*Id.* p. 32, lns. 11-23; p. 26, lns. 4-24; p. 27, lns. 1-6).   He does not conduct a pulmonary function test (*Id.* p. 33, lns. 17-19.

Dr. Vuskovich simply completes an oral history from a plaintiff, including an occupational history, smoking history, and history of other pulmonary diseases.  (*Id.* p. 33, ln. 24; p. 34, lns. 1-2).  He then conducts a physical examination with emphasis on the lungs by "listening to his lungs and examining the chest wall and see [sic] if he has any type of serious

evidence of any serious abnormalities of the chest wall. That's it." (*Id.* p. 34, lns. 3-7). He acknowledged that he is under the assumption that the person he is examining has had asbestos exposure or he would not have received the film from plaintiff's counsel in the first place. (*Id.* p. 36, lns 2-7). He further testified that he knows the general exposure and date of birth of a patient before he conducts his B-Read (*Id.* p. 36, lns. 8-24). His subsequent examination, including the history and interview of the patient would take approximately 15 minutes, and the total time he would have spent on a particular patient would be 20 minutes for the B-Read and exam (*Id.* p. 42, lns. 21-24, p. 43, lns. 1-5). He testified it would take an additional 10 minutes to draft his initial report (*Id.* lns. 8-10). Critical to the Court's analysis of his qualifications, Dr. Vuskovich acknowledged that he *did not prepare or edit* his Rule 26 Report but rather the report was *typed and submitted by Plaintiff's attorney*, Mr. Vinson. (*Id.* p. 131, lns. 3-17). He testified that with respect to his Rule 26 report, "I didn't edit them. I signed them. I read them over. I thought they reflected what was in my report." (*Id.* p. 131, lns. 15-17).

     Dr. Vuskovich stated that with respect to the Plaintiff's case, he reviewed Mr. Kochera's x-ray, interviewed him and based on that, made his report and B-read (*Id.* p. 170, lns; 1-7; p. 211, lns. 2-24). Dr. Vuskovich stated, definitively, that he did not review Plaintiff's "potential exposure to other pulmonary irritants and toxins." (*Id.* p. 170, lns. 15-23). He also did not consider any interrogatory answers or read any depositions from this case (*Id.* p. 172, lns. 2-6; p. 174, lns. 9-18). He did not administer a pulmonary function test ( PFT) to Kochera. (*Id.* p. 211, lns. 22-23). In fact, Dr. Vuskovich testified that he had not reviewed Kocher's PFT because he did not have any information about the PFT. (*Id.* p. 212, lns. 1-9). Dr. Vuskovich stated that Kochera started smoking at 17 and quit at 18 (*Id.* p. 214, lns. 1-4). He acknowledged that it would be a significant difference if Kochera "told his treating physicians. . . that he had a 37-

pack-7-year smoking history, and that he was still smoking as of . . . 2006, 2007) (*Id.* p. 215, lns. 14-21). Dr. Vuskovich, however, did *not* review Plaintiff's medical records (*Id.* p. 219, ln. 24; p.220, lns. 1-4), and he did not independently verify whether Kochera was still smoking (*Id.* p. 216, lns 1-6).

Dr. Vuskovich acknowledged that Kochera told him that he had been told by another doctor that he had asbestos-related pleural disease, but Vuskovich did not see any evidence of that on his x-ray (*Id.* p. 217, lns. 8-16). He did not review any discovery, did not read any transcripts and did not have any information on any specific defendant in the case. (*Id.* p. 220, lns. 6-21). Dr. Vuskovich did not rule out the possibility that Kochera had a history of idiopathic pulmonary fibrosis. (*Id.* p. 224, lns. 22-24; p. 225, lns. 1-7). Therefore, with only an x-ray and a 15 minute examination, and no review of previous medical records or other x-rays, Dr. Vuskovich reached his opinion, as outlined in the Rule 26 undated Report, authored by Plaintiff's counsel, that Plaintiff has asbestosis.

Dr. Vuskovich cannot recall any peer-reviewed articles he has read or reviewed as to bystander exposure and asbestosis. (*Id.* p. 133, lns. 15-24; p. 134, lns 1-5; p. 157, lns. 23-24; p. 158, lns. 1-5). Dr. Vuskovich testified he did not know the authors of any peer-reviewed articles that indicate asbestosis can be caused by bystander exposure and he did not know where those articles had been published. (*Id.* p. 133, lns. 15-24; p. 134, lns. 1-5). He also testified that he is not current on literature concerning asbestosis and bystander exposures (*Id.* p. 158, lns. 12-14). Dr. Vuskovich testified that he had no specific opinion about any defendant Plaintiff had named in this matter, and did not even know which defendants were in the case (*Id.* p. 184, lns. 18-23, *Id.* p. 185, lns. 5-7).

Dr. Vuskovich acknowledged not knowing any single source of any of Plaintiff's asbestos exposures, and testified that he did not conduct any defendant-specific research or rely on an industrial hygienist's report in this case. (*Id.* p. 232, lns. 8-12). He did not evaluate Kochera's exposure separately for each defendant in the case (*Id.* p. 231, lns. 6-9). He considered all exposures collectively (*Id.* lns. 10-12). He did not attempt to quantify cumulative exposures from all sources in terms of fiber years. (*Id.* lns. 12-15). He did not know the source of any asbestos fibers that may have remained in Plaintiff's lungs (*Id.* p. 233, lns 1-12). He therefore was unable to state what Mr. Kochera's level of exposure may have been, the source of any exposure, any fiber years, and he reached a conclusion without even reviewing Plaintiff's medical records.

Plaintiff seeks to offer as an expert a B-reader who has an admitted 80% positive finding history, who spends less than 20 minutes with a plaintiff, who only reviews one x-ray, who does not compare x-rays taken on different dates to see if there has been progression of disease, who does not review medical records or discovery in a case, who does not know exposure history or have any actual source of exposure, and, critically, who signs a report, submitted as an "Expert Report" under Rule 26, which he only read and signed. That "report" was written by the lawyer who hired him, Plaintiff's attorney, who has no medical qualifications. Plaintiff's purported expert, Dr. Vuskovich, did not even draft or edit his own report, which he now seeks to admit as an "Expert's" report. This Court should find that Dr. Vuskovich is not qualified to testify in this matter and bar the admission of his testimony and reports.

## ARGUMENT

The Supreme Court has made it clear that scientific testimony is admissible under Rule 702 only if it is based on "scientific knowledge" that is "derived by the scientific method" and

that "proposed testimony must be supported by appropriate validation – i.e. 'good grounds,' based on what is known. In short, the requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 590 (1993). Therefore, the district court is to be the "gatekeeper" to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589.

Applying *Daubert*, the Seventh Circuit has been a leader in weeding out "experts who offer credentials rather than analysis," *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997). As Judge Easterbrook said, even before *Daubert* was decided, "Judges should not be buffaloed by unreasoned expert opinions…. [U]kase in the guise of expertise is a plague in contemporary litigation." *Mid-State Fertilizer v. Exchange National Bank*, 877 F.2d 1333, 1340 (7th Cir. 1989). Among *Daubert's* (and Rule 702's) requirements is the directive that the proffered expert testimony must be on issues for which the expert is qualified to opine. *E.g.*, *Cummins v. Lyle Industries*, 93 F.3d 362, 370 (7th Cir. 1996). *Daubert* also requires that a purported expert's testimony be reliable. This means that a "district judge should assure himself, before admitting expert testimony, that the expert knows whereof he speaks." *Bammerlin v. Navistar International Transportation Corp.*, 30 F.3d 898, 901 (7th Cir. 1994).

The Seventh Circuit has noted that under *Daubert* and Rule 702 "district courts, prior to admitting expert testimony, determine whether the testimony is reliable and whether it will assist the trier of fact in determining some fact that is at issue." *Stuhlmacher v. Home Depot USA, Inc.,* 774 F.3d 405, 409 (7th Cir 2015). In *Stuhlmacher*, however, the expert engaged in detailed and case-specific analysis, an element wholly lacking in Dr. Vuskovich's Report and testimony.

An expert's opinion is helpful to the court "only to the extent the expert draws on some special skill, knowledge, or experience to formulate [his] opinion; the opinion must be an *expert* opinion (that is, an opinion informed by the witness's expertise) rather than simply an opinion broached by a purported expert." *United States* v. *Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996). The court must be satisfied that "the expert's opinion has a reliable basis in knowledge and experience of his discipline." *Deimer* v. *Sub-Zero Products, Inc.*, 58 F.3d 341, 345 (7th Cir. 1995).

1. <u>Dr. Vuskovich Is Not Qualified to Render an Expert Opinion</u>.

The Commentary to Rule 702 indicates that among other indicia of expert reliability is "whether experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of litigation, or whether they have developed their opinions expressly for purposes of testifying." Fed. R. Evid. 702, 2000 Advisory Committee's Note.

Dr. Vuskovich is not a radiologist or pulmonologist, he is not qualified to read CT scans. Although he is a B-reader, he has admittedly not conducted any scientific studies, and he has not published in his field. He was unaware of the Plaintiff's medical history. He does not treat asbestosis. He is clearly a "hired gun," and nothing more. To allow Dr. Vuskovich to testify as to his opinion as to whether Plaintiff has asbestosis, would be contrary to Rule 702 and the *Daubert* principle. Dr. Vuskovich simply is not qualified to render an expert opinion and should therefore not be allowed to give expert testimony in this case.

2. <u>Dr. Vuskovich's Opinions Are Based On Insufficient And Incomplete Information and His Testimony Is Not Reliable.</u>

Even if Dr. Vuskovich qualifies as an expert, which GE denies he should so qualify, his testimony should still not be allowed because it is based on unreliable and incomplete facts/data.

As the proponent of Dr. Vuskovich's testimony, Plaintiff has the burden of establishing its admissibility. *In re Paoli R.R. Yard PCB Litig.* 35 F.3d 717, 743-44 (3d Cir. 1994). "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Carroll v. Otis Elevator Co.,* 896 F.2d 210, 212 (7th Cir. 1990). Science is the process of "generating hypotheses and testing them to see if they can be falsified." *Daubert*, 509 U.S. at 593.  Dr. Vuskovich's opinions are based on incomplete information and evidence and are not only falsifiable, but he reaches unsupported, false conclusions.

Dr. Vuskovich clearly lacks an adequate basis for his expert opinions because he has admitted that he had an incomplete history as to what Plaintiff's actual exposure to asbestos would have been, he did not review any discovery and does not know which defendants are in the case.  (Ex. E. p. 220, lns. 6-21).  He did not rule out other possibilities or conditions that could have caused Plaintiff to have pulmonary fibrosis or interstitial lung disease (*Id.* p. 308, lns. 6-17).  Dr. Vuskovich's testimony is based on a cursory review of Plaintiff's medical and work history, and is pure guesswork as to Plaintiff's possible exposure.  He only reviewed Plaintiff's x-ray and did not compare it to earlier x-rays to determine if there was any progression in his disease, and did only a brief and limited physical examination. (*Id.* p. 224, lns. 22-24; p.225, lns. 1-7).  His testimony simply cannot qualify as an expert opinion under the *Daubert* standards.

Notably, Dr. Vuskovich is the only source of the opinion that the Plaintiff has asbestosis.  Plaintiff's personal physician, Dr. Geraldine Ryan, testified that she asked the Plaintiff if he had been exposed to asbestos and he stated he was not aware of any history of exposure (Deposition of Geraldine Ryan, MD, attached hereto as Exhibit "F", p. 14, lns. 4-8).  In 2002, she testified that Kochera had an abnormal x-ray suspect for plural thickening,  and a follow-up CAT scan

was performed. That CAT scan identified a small about of pleural effusion and cardiomegaly (*Id.* pp. 15-17).

She also testified that in November 2002, Dr. Lampert reviewed the Plaintiff's chest x-ray and found his lungs to be clear, with no evidence of pleural effusion, and no evidence of pneumoconiosis (*Id.* p. 18, lns. 9-19). Dr. Ryan testified that she saw the Plaintiff on November 14, 2002, and observed that the Plaintiff's lungs were clear and there were no signs of wheezing. (*Id.* p. 18, lns 10-17). In February 2003, Dr. Ryan prescribed Wellbutrin to help the Plaintiff to stop smoking (*Id.* p. 21, lns. 2-8). In August 2006, the Plaintiff exhibited expiratory wheezing, which is a sign of airway obstruction (*Id.* p. 23, lns. 2-8).

In 2007, Dr. Ryan's records reflect that the Plaintiff was still smoking, and that he had been smoking a pack and a half of cigarettes for five years but has smoked on and off since the age 13. (*Id.* pp. 24-26). In March 2008, the Plaintiff reported to Dr. Ryan that he was no longer smoking (*Id.* p. 26, lns. 20-22). She further testified that as of June 2008, the Plaintiff was still suffered from obstructive pulmonary disease, but that "it has improve with discontinuation of smoking." (*Id.* p. 27, lns.3-10).

Dr Ryan testified that in October 2010, Plaintiff saw Dr. Ryan for exposure to pneumonia and reported that he was again smoking. (*Id.* p. 30, lns.6-8; p. 31, lns. 2-20 Dr. Ryan testified that in October 2010, the Plaintiff had an x-ray at Mercy Hospital which was "unremarkable, no changes from previous chest-x-ray no infiltrates, pneumothorax or pleural effusion." (*Id.* p. 32, lns. 8-18). In September of 2012 Dr. Ryan again diagnosed plaintiff with pneumonia and ordered an x-ray. That x-ray revealed "failure to demonstrate pleural, pulmonary or mediastinal abnormality." (*Id.* p. 35, lns. 8-23; p. 36, 3-22) As stated in layman's terms his "lungs were clear." (*Id.* p. 36, lns.17-22)

Dr. Ryan further testified that in January of 2013, Plaintiff fell, injured his chest and an x-ray was taken which showed, "lungs are clear." (*Id.* p. 37, lns. 2- 24, p. 38, lns 1-17). In March of 2013, the Plaintiff again saw Dr. Ryan and reported to her that he was smoking a pack per day. A pulmonary function test was administered by Dr. Wald and Dr. Ryan stated that Plaintiff had an obstructive defect, but that the lung capacity and volumes were normal. (*Id.* p. 42, lns. 16-13). In May of 2013, the Plaintiff went to Urgent car for a cough and ear infection, and Dr. Ryan stated that the review of the x-ray taken on May 5, 2013, found no active pulmonary disease. (*Id.* p. 44, lns. 20-24).

Dr. Vuskovich was unable to identify the protocol he used for his B-Read in this case (Ex. E. p. 170, ln. 24; p. 171, lns. 1-18). He admittedly did not exclude any alternate causes for his findings. "If the data underlying the expert's opinion are so unreliable that no reasonable expert could base an opinion on them, the opinion resting on that data must be excluded." *In re TMI Litig.*, 193 F.3d 613, 697 (3rd Cir. 1999). Notably, he did not review or know Plaintiff's medical history, nor did he consider that necessary for his diagnosis or report. (Ex. E generally).

Dr. Vuskovich spent, at most, 20 minutes to reach his ultimate opinion that Plaintiff has asbestosis. (Ex. E, p. 42, lns. 13-24; p. 43, lns. 1-10). This opinion was reached, by his own admission, without considering such things as a complete medical history and other possible toxins or exposures. (*Id.,* generally) Clearly Dr. Vuskovich has "demonstrated a willingness to abandon the norms of his profession in the interest of his client. Such a person cannot be trusted to continue as an expert in the case in which he has demonstrated that willingness…" *Emerald Inv. L.P. v. Am. Fin. Life Ins. & Annuity Co.*, 516 F.3d 612, 618 (7th Cir. 2008).

The Seventh Circuit has, for more than two decades, worked to preclude exactly this sort of bogus expert testimony. See, eg. *Mid-State Fertilizer*, 877 F.3d at 1340. The Seventh Circuit

has repeatedly noted that "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Id.* at 1339. See, *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997) (where the Court noted that an affidavit submitted by plaintiff's expert was "full of vigorous assertion . . . carefully tailored to support plaintiff's position but devoid of analysis. [The expert] must have allowed the lawyers to write an affidavit in his name. He does not identify and test any hypothesis; he does not identify any hypotheses considered and rejected; indeed, he does not suggest any way in which his views may be falsified." *Id.* The Seventh Circuit has noted that it is "vital" that "judges not be deceived by the assertions of experts who offer credentials rather than analysis," and "an expert's report that does nothing to substantiate [his] opinion is worthless, and therefore inadmissible." *Id.*

This Court should find that Dr. Vuskovich's opinions, with respect to any basis for Plaintiff's exposure to asbestos products, are based on conjecture and guesswork and are not the product of scientific conclusions, based on adequate and unbiased data. Therefore, these opinions are not reliable and the Court should exclude the testimony of Dr. Vuskovich.

    3.    <u>The Exposure Theories On Which Dr. Vuskovich Relies Are Unsupported By Scientific Fact or Data</u>.

If Dr. Vuskovich is found to be an expert and if the Court further finds that his testimony is based on reliable facts/data, which GE denies, his testimony should still not be allowed.

To the extent that Dr. Vuskovich relies on an every exposure basis to support his findings of asbestosis, his testimony should be excluded from this trial as it is inadmissible under Rules 702 and 703, as well as the seminal cases of *Daubert* and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

The every exposure theory does not meet the "substantial factor" requirement and "has been rejected by numerous federal and state courts as unscientific and unsubstantiated by

evidence." *Quirin v. Lorillard Tobacco Co.*, 2014 WL 804305, at *2 (N.D.Ill. Feb. 28, 2014) (collecting cases); See also *Lindstrom*, 424 F.3d at 492-93; *Smith v. Ford Motor Co.*, 2013 WL 214378, at *1-3 (D. Utah Jan. 18, 2014); *Betz v. Pneumo Abex,* LLC, 44 A.3d 27, 56-57 (Pa. 3023). As the MDL Court has noted, a "mere 'minimal exposure' to a defendant's product is *insufficient* to establish causation." *Krik v. BP Am., Inc.*, MDL No. 875, 2012 WL 2914244, at *1. (E.D. Pa. May 15, 2012) (emphasis added).

This Court should exercise its "gatekeeper" role and exclude the testimony of Dr. Vuskovich because his theories of exposure are not supportable. Dr. Vuskovich should not be allowed to testify as to exposure because he does not even know which defendants are in this case (Ex. E, p. 185, lns. 5-7). As noted in *Daubert*, "an inference or assertion must be derived by the scientific method." 509 U.S. at 590. Further, "something doesn't become 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were 'derived by the scientific method' be deemed conclusive." *Daubert v. Merrell Dow Pharms,* 43 F.3d 1311, 1315-16 (9th Cir. 1995) (on remand). The Seventh Circuit has held, "Many times we have emphasized that experts' work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff— deploying neither data nor analysis—is not acceptable methodology." *Bourelle v. Crown Equip. Corp.* 220 F. 3d 532, 539 (7th Cir. 2000).

Dr. Vuskovich conceded that he did not evaluate any specific products or defendants with respect to possible exposure of the Plaintiff. (Ex. E, p. 195, lns. 17-20), nor did he review any pulmonary function tests (*Id.* p. 241, lns. 21-24), nor did he review Plaintiff's medical records. (*Id.*, p. 304-306). Plaintiff's counsel conceded that Dr. Vuskovich "didn't do any defendant-specific research." (*Id.* p. 196, lns. 17-18). The only exposure history he considered was what he

was told during a 15-minute interview and medical examination of Plaintiff. (*Id.* p. 195, lns. 5-7). He did not exclude other conditions that might account for the x-ray results. (*Id.*, p. 308, lns. 6-17).

Dr. Vuskovich's opinion is only based on "generalized citations to scientific literature, with no indication that these are the authorities upon which" he relied. *Krik,* 2014 WL 7330901, at *5. Just as the court noted in *Krik*, the supposed expert, Dr. Vuskovich, has touted his exposure theory "with little to no evaluation of the actual facts of the case." *Id.* Dr. Vuskovich simply cannot bootstrap his unsupported beliefs into an expert opinion that meets the rigors of *Daubert*. This Court should find, as other courts have found in the past, that Dr. Vuskovich is not qualified to testify as to exposure and bar such testimony at the trial in this matter.

## CONCLUSION

Accordingly, the Court should grant GE's Motion in Limine to exclude the testimony of Matthew A. Vuskovich, M.D., and for such and further relief as this Court may deem just and proper.

Defendant GE also hereby joins in and adopts all co-defendants' motions to bar or exclude the testimony of Matthew A. Vuskovich, M.D.

ARMSTRONG TEASDALE LLP

BY: */s/ Raymond R. Fournie*
    Raymond R. Fournie     #03126094
    Anita M. Kidd     #6229585
    Melanie R. King     #6192411
    Julie Fix Meyer     #6189064
    7700 Forsyth Blvd., Suite 1800
    St. Louis, Missouri 63105
    314.621.5070
    314.621.5065 (facsimile)
    rfournie@armstrongteasdale.com
    akidd@armstrongteasdale.com
    mking@armstrongteasdale.com
    jfixmeyer@armstrongteasdale.com

ATTORNEYS FOR DEFENDANT
GENERAL ELECTRIC COMPANY

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on the 3rd day of April, 2015, this document was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                              */s/ Raymond R. Fournie*