IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANDREW V. KOCHERA, JR., | ) | IN RE:  ASBESTOS LITIGATION |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs.- | ) | No. 3:14-cv-00029-JPG-DGW |
| | ) | |
| ATLAS COPCO COMPRESSORS, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPORT OF DR. MATTHEW VUSKOVICH

I am a medical doctor, licensed to practice medicine in the states of Virginia, Florida, Louisiana, and Kentucky. I am board certified in the specialty of Occupational Medicine. Occupational Medicine is the specialty of medicine that deals with diseases and injuries related to occupations. It is a sub-specialty of the specialty of Preventative Medicine. Occupational Medicine focuses heavily on pulmonary medicine because so many occupational exposures are pulmonary exposures.

I also have a Master of Science Degree in Public Health (MSPH). It is a requirement for board certification in Occupational Medicine that one have a scientific degree of either a Master of Public Health or Master of Science in Public Health. Some of the key components in the MSPH program are biostatistics, epidemiology, industrial hygiene, and toxicology.

I am also a certified B reader. The B reader program is administered by the National Institutes of Occupational Safety and Health. I was first certified in 1990 and have been re-certified five times.

From 2002 to 2008, I was a member of the Kentucky Labor Cabinet Department of claims for coal workers' pneumoconiosis.

Between 1986 and 2011, I administered thousands of evaluations for pneumoconioses including coal workers' pneumoconiosis, silicosis, and asbestosis.

Attached hereto as "Exhibit A" is a copy of my curriculum vitae that reflects my medical education, training, and qualifications.   This curriculum vitae is adopted and incorporated herein by reference.

I examined Mr. Andrew Kochera on May 18, 2013.

Attached hereto as "Exhibit B" and made a part hereof is a true and accurate copy of the report I created concerning my examination of Mr. Kochera on May 18, 2013.

As part of my examination of Mr. Kochera, I obtained an occupational history from him wherein he explained to me how he was exposed to asbestos during his employment.   I also discussed with him his potential exposure to other pulmonary irritants and toxins.

As part of my examination of Mr. Kochera, I obtained a history of his military service. I asked him about his military service, if any, to determine whether there might have been asbestos exposure in his military service.

As part of my examination of Mr. Kochera, I obtained an explanation of his respiratory symptoms from him wherein he explained the respiratory symptoms he was experiencing.   If a patient does not report any respiratory symptoms this does not rule out a diagnosis of asbestosis, because asbestosis can be present without symptoms.

As part of my examination of Mr. Kochera, I obtained an explanation of his past pulmonary history because some diseases can mimic asbestosis.

As part of my examination of Mr. Kochera, I questioned him about what medications he was taking at the time of the examination. I asked this because this information sometimes gives insight as to why a patient may not be experiencing pulmonary symptoms.

As part of my examination of Mr. Kochera, I obtained a smoking history from him wherein he explained his past use of cigarettes and other tobacco products to me. Even though cigarette smoking can cause chest x-ray changes similar to those caused by asbestos, it is extremely rare.  Further, the fibrogenic potency of asbestos is much greater than cigarette smoke.

I performed a pulmonary examination on Mr. Kochera on May 18, 2013 and the results of the pulmonary examination are listed in my report attached as Exhibit B. I listened to Mr. Kochera's breath sounds, his heart, observed his general appearance, and examined Mr. Kochera's hands for clubbing of the fingers. The absence of abnormal breath sounds does not rule out a diagnosis of asbestosis. It means only that the disease has not advanced to the point of causing abnormal breath sounds.

I also interpreted a chest x-ray taken of Mr. Kochera. My evaluation of the chest x-ray was performed according to the ILO B-reader standards. I followed protocol for a B reader interpretation of chest x-rays. Specifically, I compared the chest x-ray to the ILO standard films. I also completed an ILO B-reader form for the film.

Attached hereto as "Exhibit C" is a copy of my B-reader chest x-ray interpretation form. It shows that I interpreted the film as a Quality 1 film (of good diagnostic quality) that depicts the presence of small opacities (type s in predominance) consistent with pneumoconiosis with a profusion of 2/1.

Based on the information I obtained from Mr. Kochera onMay 18, 2013, my examination of Mr. Kochera on May 18, 2013, and my B reader interpretation of his chest x-ray, I diagnosed Mr. Kochera with bilateral pulmonary asbestosis.

In making the diagnosis stated in the preceding paragraph, I followed the guidelines set forth in *The Diagnosis and Initial Management of Nonmalignant Diseases Related to Asbestos*, Am. J. Respir. Crit. Care Med. 2004; 170(6):691. This article is an article published by the American Thoracic Society and is generally accepted in pulmonary and occupational medicine for establishing the criteria for the diagnosis of non-malignant asbestos disease.

The process of considering all of the information in the various histories given by Mr. Kochera, consideration of the latency period between Mr. Kochera's reported asbestos exposures and the date of my examination, consideration of information obtained from the examination of Mr. Kochera, consideration of the interpretation of Mr. Kochera's chest x-ray, and application of principles of occupational medicine, including the principles set forth in *The Diagnosis and Initial Management of Nonmalignant Diseases Related to Asbestos*, Am. J. Respir. Crit. Care Med. 2004; 170(6):691 was the method I used to reach the diagnosis of asbestosis.

In applying this methodology, I considered other causes for the abnormalities seen on Mr. Kochera's chest x-ray. Mr. Kochera's occupational exposures and the latency period were consistent with the changes I saw on his chest x-ray.

My diagnosis of asbestosis was based on a reasonable degree of medical certainty.

It is not a necessary criterion for the diagnosis of asbestosis to have quantification of the asbestos to which a worker was exposed. *See*, *The Diagnosis and Initial*

*Management of Nonmalignant Diseases Related to Asbestos*, Am. J. Respir. Crit. Care Med. 2004; 170(6):691.  As a practical matter, a physician rarely has quantitative data on a patient's asbestos exposure.

It is not the usual course of an examining physician to take steps to personally investigate the veracity the history given to the examiner by the patient. Such an investigation would be impracticable. Further, because the exposures occurred many years ago (asbestosis is a latent disease) the workplace conditions have changed.

It is not possible to say, within a reasonable degree of medical certainty, what the threshold exposure requirement is for asbestosis for any individual because of 1) individual human susceptibility, 2) asbestosis can be present without being detectable on x-ray and 3) how fast the disease progresses to the point of being detected by radiology.

Asbestosis is a cumulative disease. This means that every exposure to asbestos that is non-trivial in context contributes to the interstitial scarring in the lungs, which is the disease of asbestosis. Further, every exposure that is non-trivial in context contributes to the pathophysiology that results from asbestosis. Based on my discussion with Mr. Kochera, my review of his deposition transcript, and my review of his interrogatory responses, Mr. Kochera's exposures to Defendants' products were non-trivial in context. If Mr. Kochera was exposed to asbestos while working with Defendant's products, in my opinion, the exposures during his work for Defendant were a cause, at least in part, of the asbestosis which I diagnosed.

As stated above, asbestosis is a cumulative dust disease. For this reason, even if Mr. Kochera was exposed to asbestos from the ambient air, from other products, or even at home, his exposure to asbestos from Defendants' products was still a cause, in part, of

his asbestosis. Further, even if Mr. Kochera had a smoking history that contributed to his x-rays' changes, his asbestos exposure also contributed to cause these changes.

I anticipate that in my testimony in this action, I may use the following as demonstrative exhibits: 1) Mr. Kochera's chest x-rays; 2) A blank ILO B reader interpretation form; 3) The ILO B reader form I completed for Mr. Kochera's chest x-rays; 4) The pulmonary function results for Mr. Kochera; 5) Photographs of asbestos fiber; 6) Medical drawings of the human pleura, lung, and alveoli; 6) Drawings of human anatomy made by me during my testimony; and/or 7) Standard ILO comparison films.

Attached herein and incorporated by reference is a list of testimony I have given in the last four years at deposition and trial.

I charge $200.00 per hour for the review of records. I charge $500.00 per hour for testimony in medical/legal matters.

_____
Dr. Matthew A. Vuskovich, M.D. M.S.P.H.