IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

**ANDREW V. KOCHERA, JR.,**

    Plaintiff,

v.                                            No. 14-CV-00029-SMY-SCW

**FOSTER WHEELER, LLC,** *et al.*,

    Defendants.

## MOTION FOR SUMMARY JUDGMENT

Defendant Ingersoll-Rand Company (erroneously sued herein as Ingersoll-Rand Company, Individually and as Successor to Terry Steam Turbine Company) by and through its attorneys, HEPLERBROOM LLC, moves this Court for an order granting summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Andrew V. Kochera, Jr. has never worked with, or near, Defendant's products during his career. He cannot show that this Defendant's products were a substantial factor in causing his claimed condition of asbestosis. Moreover, Defendant did not owe a duty for products manufactured or sold by third parties. Defendant therefore believes it is entitled to summary judgment on all counts in Plaintiff's complaint.

### STATEMENT OF UNDISPUTED MATERIAL FACTS

1.    Plaintiff Andrew V. Kochera, Jr. brings this personal-injury action based on allegations that he was exposed to asbestos fibers through his work in the U.S. Navy. *See* First Amended Complaint, Nov. 5, 2013, Docket #1. Plaintiff alleges that this exposure to asbestos caused him to develop asbestosis in May 2013. *Id.* at ¶ 40. Plaintiff alleges that he was exposed to the asbestos through his work with and around various products that were manufactured, sold,

distributed, installed, or promoted by the defendants in this case, including Defendant Ingersoll-Rand Company *Id.* at ¶ 3. He contends that the defendants in this case had a duty to exercise reasonable care and caution for Plaintiff's safety while he was working with and around "the products of the Defendants containing asbestos." *Id.* at ¶ 41. Defendants, he claims, failed to exercise ordinary care and caution for Plaintiff's safety by, among other things, including asbestos in their products when it was foreseeable that persons working with or around them would inhale "great amounts of asbestos," including asbestos in their products when adequate substitutes for asbestos were available, failing to provide warnings to persons working with and around the products of the dangers of inhaling asbestos fibers contained in them, and failing to provide instructions concerning safe methods of working with and around their products. *Id.* at ¶ 42.

2.   During his deposition, Plaintiff did not identify or mention the name Ingersoll-Rand <u>*at all*</u>. *See* Plaintiff's Deposition Transcript, June 24, 2014, Exh. A, at 4:6-8; 386 (only time "Ingersoll Rand" identified in the deposition transcript was in reference to the appearance of Ingersoll-Rand's counsel attending the deposition). Plaintiff entered the Navy in November 1954 and served until July 1957, less than three years total. Exh. A, 23:3–5; 48:21–23. After basic training, he was briefly assigned to the U.S.S. Jason for about two months. *Id.* at 30:19–24, 32:7–9. In April 1955, Plaintiff was transferred to the U.S.S. Hector, where he was stationed for less than six months. *Id.* at 38:4–11. Plaintiff was assigned to the evaporator room on the Hector. *Id.* at 40:7–11. A couple times, Plaintiff helped out in the boiler room and ice machine room. *Id.* at 41:17–20. Plaintiff served the remainder of his time, from April 1956 until July 1957 (16 months), on the U.S.S. Roosevelt aircraft carrier as a fireman. *Id.* at 48:21–24, 49:1–4, 49:12–14. Plaintiff testified that did not work on or around any equipment when he was stationed on the

U.S.S. Jason and Hector, so his relevant testimony pertained only to the U.S.S. Roosevelt. *Id.* at 168:4–8, 270:5–7.

     3.     For the first six to seven months, the Roosevelt was in dry dock. *Id.* at 49:9–11. Plaintiff was in the A Division, assigned to the ice machines area. *Id.* at 49:15–18, 51:2–3. Plaintiff spent most of his time working on the ice machines and in the freezers (or "chiller room"). *Id.* at 52:2–5. He helped with some work in the boiler and engine rooms, but "not very long," *Id.* at 51:12–15, only a week or week and a half assisting in the rear engine room, *Id.* at 68:20–24, a couple days in the no. 2 boiler room, *Id.* at 72:21–24, 73:1. He also worked on copper lines in the locker. *Id.* at 73:21–24, 74:12–18. After the Roosevelt departed dry dock, Plaintiff was assigned to stand watch in the ice-machine and evaporator rooms. *Id.* at 78:3–6, 20–24, 79:5–7, 86:8–16, 87:6–16.

     4.     Plaintiff himself never ordered any materials that were used in the Navy. *Id.* at 116:1–4. He also attested that the Navy was in control of specification for materials that were used on the ships he served on. *Id.* at 116:5–16.

     5.     The Roosevelt and Hector were built near the end of World War II, over ten years before Plaintiff boarded them. *Id.* at 52:23–24, 53:1–9. Thus Plaintiff did not know what repairs had been performed on any of the equipment before he began his service. *Id.* at 367:22–24, 368:1–2.

     6.     Three individuals have testified in this case who also served on the U.S.S. Roosevelt: Lawrence Krieg, Douglas McWhirter, and Ferrell Crowder. Plaintiff, however, did not recall serving with any of them. Exh. A, 96:13–24, 97:1–24, 98:1–3. Neither Mr. McWhirter nor Mr. Krieg knew who Plaintiff was. *See* Lawrence Krieg Deposition Transcript, Oct. 22, 2014, Exh. C, 13:13–17; Douglas McWhirter Deposition Transcript, Oct. 3, 2014, Exh. D,

15:21–23. Mr. Crowder thought Plaintiff's name sounded familiar, but he himself served in Division B and believed Plaintiff served in Division M—which is incorrect; Plaintiff served in Division A. *See* Ferrell Crowder Deposition Transcript, Oct. 20, 2014, Exh. E, 9:3–14. In any event, Mr. Crowder never witnessed Plaintiff working on any equipment nor witnessed him around when any equipment was being worked on by others. *Id.* at 35:6–11, 69:5–10.

7. Regarding this Defendant's products, Mr. McWhirter recognized Ingersoll-Rand air compressors and air tools, but had never seen them on the Roosevelt. Exh. D, 154:7-22, 155:18–24, 156:1. Mr. Crowder recognized Ingersoll-Rand pumps, but did not remember them on the Roosevelt. Exh. E, 177:14–24, 178:1–13. After mentioning Ingersoll-Rand packing, Mr. Crowder withdrew that as a mistake, since he did not actually associate Ingersoll-Rand with packing. *Id.* at 191:6–20. He noted there were 2- to 3-inch Ingersoll-Rand regulators in his Two Bravo boiler space on the Roosevelt. *Id.* at 192:2–22. Regulators were the only equipment Mr. Crowder associated with Ingersoll-Rand on the Roosevelt. *Id.* at 197:9–16. In his deposition, however, Plaintiff never mentioned the term "regulator" <u>at all</u>. *See* Exh. A. at 395. Finally, Mr. Krieg believed there were Ingersoll-Rand generators on the flight deck of the Roosevelt. Exh. C, 150:4–10. However, Krieg did not know whether any work on the generators would have involved asbestos, such as from insulation, packing, or gaskets. *Id.* at 150:14–17. Krieg never saw any member of the crew working on the generators and did not associate the generators with asbestos. *Id.* at 186:13–19. Not surprisingly, Plaintiff never mentioned the term "generator" <u>at all</u>. in his deposition. *See* Exh. A. at 383.

8. In addition to the sixteen defendants sued in this matter, Plaintiff has also submitted claims to bankrupt entities alleging that his asbestosis was caused by additional products. Enclosed as Exhibit F are affidavits from Plaintiff he previously submitted to bankrupt

4

trusts seeking compensation for his asbestosis. According to his sworn affidavits, Plaintiff testified that he was exposed to asbestos in the Navy because his duties included replacing Eagle Picher Super 66, Armstrong, and Pabco asbestos-containing insulating cement. Exh. F. Plaintiff describes pouring powder insulating cement into buckets and mixing it with water, which caused dust to go airborne. *Id.* He also replaced Owens-Corning asbestos-containing pipe covering, which created dust when he sawed it off. *Id.* Plaintiff further attests that he worked near boiler tenders who cutting off asbestos insulation from Babcock & Wilcox boilers. *Id.*

9. Plaintiff designated Jerome Spears as an expert witness. Mr. Spears was not asked to perform, nor did he perform, any quantitative exposure reconstruction. See Deposition of Jerome Spears, Exhibit G, at 295-296. Instead, Mr. Spears opines that each and every time Plaintiff may have worked around asbestos-containing products in the Navy, that would have increased his risk for asbestosis. *Id.* at 304:1-9; 305:2-4. Mr. Spears confirmed that would be the case regardless of whether the equipment or materials that Plaintiff may have been around during his employment contained one percent asbestos or one hundred percent asbestos. *Id.* at 305:2-15.

10. Plaintiff's sole medical expert, Dr. Vuskovich, did not provide any product or defendant-specific opinions in his Rule 26 report. See Dr. Vuskovich's Rule 26 report, attached as Exhibit H, at p. 5. Moreover, Plaintiff's medical expert did not conclude in his Rule 26 expert report that Mr. Greenleaf was even exposed to asbestos while serving in the Navy: "if Mr. Greenleaf was exposed to asbestos while working with Defendant's products . . ." Exh. H at p. 5. Dr. Vuskovich's report also provides that <u>if</u> Mr. Greenleaf was exposed to asbestos while working with [any of] Defendant's products, each and every exposure to asbestos above background caused or contributed to Decedent's asbestosis. *Id.* Similarly, Plaintiff's counsel

5

stipulated at Dr. Vuskovich's deposition that Dr. Vuskovich cannot provide any defendant specific testimony. Deposition of Dr. Matthew Vuskovich, Exhibit I, at 265: 1-10.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate when the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009). The burden on the moving party may be discharged by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v Catrett*, 477 U.S. 317, 325 (1986) (an asbestos exposure case). In *Celotex,* the Supreme Court held that such a "showing" does not mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact. *Id.* at 325. Instead, a party seeking summary judgment simply bears the initial responsibility of informing the district court of the basis for its motion, and identifying its documents which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial. *Id.* Once a party has made a properly supported motion for summary judgment, the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010). The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive a summary judgment motion. *Id.* Thus, while the admissible evidence in the record is viewed in the light most favorable to the nonmoving party, a court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or

conjecture. *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012). Moreover, any factual disputes precluding summary judgment must be both material and genuine. *Carroll v. Merrill Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). "[A] factual dispute is 'genuine' only if a reasonable jury could find for either party." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

**B.      Application of Maritime Law**

Whether maritime law is applicable is a threshold issue that is a question of federal law. U.S. CONST. ART. III, § 2; 28 U.S.C. § 1333(1); *Carey v. Bahama Cruise Lines*, 864 F.2d 201, 206 (1st Cir. 1988) (whether maritime law governs is a matter of federal law regardless of whether the plaintiff invoked that jurisdiction). Maritime law applies to an alleged asbestos injury involving a seaman whose exposures occurred aboard a vessel on navigable waters during a traditional maritime activity. *Conner v. Alfa Laval, Inc.*, 799 F. Supp. 2d 455, 463 (E.D. Pa 2011); *Lambert v. Babcock & Wilcox, Co.*, 70 F. Supp. 2d 877, 884 (S.D. Ind. 1999). Navigable waters includes work aboard a ship that docked at a shipyard, *see, e.g.*, *Sisson v. Ruby*, 497 U.S. 358 (1990), which includes a ship in dry dock. *See Deuber v. Asbestos Corp. Ltd.*, No. 10-78931, 2011 WL 6415339, at *1 n.1 (E.D. Pa. Dec. 2, 2011) (applying maritime law to a ship in dry dock for overhaul). Here, it is undisputed that Plaintiff's alleged exposure to Defendant's products would have occurred while he was on board the U.S.S. Roosevelt, either in dry dock or on at sea in navigable waters. Plaintiff's alleged exposure was therefore during sea-based work, and maritime law applies.

### C. Defendant Is Entitled to Summary Judgment Because Plaintiff Cannot Establish Defendant's Products Were a Substantial Factor in Causing Decedent's Alleged Injury.

To establish causation for an asbestos claim under maritime law, a plaintiff must show, for each defendant, that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor in causing the injury he suffered." *Lindstrom v. A–C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005); *accord Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001). Further, the plaintiff must show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged. *Abbay v. Armstrong Int'l, Inc.*, No. 10–83248, 2012 WL 975837, at *1 n.1 (E.D.Pa. Feb. 29, 2012); *Conner v. Alfa Laval, Inc.*, 842 F.Supp.2d 791, 801 (E.D.Pa. 2012). Substantial-factor causation is determined with respect to each defendant separately. *Stark*, 21 F. App'x at 375. In establishing causation, a plaintiff may rely upon direct evidence (such as testimony of the plaintiff or decedent who experienced the exposure, co-worker testimony, or eye-witness testimony) or circumstantial evidence that will support an inference that there was exposure to the defendant's product for some length of time. *Id.* at 376 (*quoting Harbour v. Armstrong World Indus., Inc.,* No. 90–1414, 1991 WL 65201, at *4 (6th Cir. April 25, 1991)).

"In addition, we have permitted evidence of substantial exposure for a substantial period of time to provide a basis for the inference that the product was a substantial factor in causing the injury." *Lindstrom*, 424 F.3d at 492. A mere "minimal exposure" to a defendant's product, however, is insufficient to establish causation. *Id.* at 492. "Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Id.* The plaintiff must show "'a high enough level of exposure that an inference that the asbestos was a

8

substantial factor in the injury is more than conjectural.'" *Id.* (quoting *Harbour*, 1991 WL 65201, at *4).

Here, it is undisputed that Plaintiff spent most of his time in the Navy assigned to ice machines and evaporator rooms. Plaintiff did not identify or mention the name Ingersoll-Rand *at all* in his deposition. *See* Exh. A, at 4:6-8; 386 (only time "Ingersoll Rand" identified in the deposition transcript was in reference to the appearance of Ingersoll-Rand's counsel attending the deposition). Moreover, Plaintiff did not repair or maintain equipment on any of the ships on a day-to-day basis. He testified that most of his work was on evaporators. Plaintiff himself had absolutely no testimony about Defendant's products. Plaintiff therefore cannot show that Defendant's products were a *substantial factor* in causing his alleged asbestosis. To provide the necessary inference to survive summary judgment, Plaintiff must produce evidence of "substantial exposure for a substantial period of time." *Lindstrom*, 424 F.3d at 492; *accord Kelly v. CBS Corp.*, MDL No. 875, No. 1:11-67269-ER, 2014 WL 6735103, at *1 n.1 (E.D. Pa. Aug. 18, 2014) (finding that the plaintiff's exposure to asbestos-containing gaskets from two pumps was "mere minimal exposure"). While the admissible evidence in the record is viewed in the light most favorable to Plaintiff, that does not extend to drawing inferences that are supported by only speculation or conjecture. *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012). A jury in this case would have to disbelieve Plaintiff's own testimony and speculate that he did a substantial amount of work for a substantial period of time on Ingersoll-Rand equipment. None of the three shipmates either knew Plaintiff or were familiar with his actual work on the Roosevelt. Mr. Crowder did not even know which Division Plaintiff worked in. Plaintiff has failed to meet his burden of production in this case, evidence of "substantial exposure for a substantial period of time" attributed to this Defendant's products. *Lindstrom*,

424 F.3d at 492. Moreover, the mere showing that Defendant's regulators or electrical generators may have been present somewhere on the Roosevelt is insufficient as a matter of law to establish causation. *See, e.g. Lindstrom*, 424 F.3d at 492. Plaintiff never mentioned the terms "regulator" or "generator" <u>at all</u> in his deposition. *See* Exh. A. at 383, 395. Summary judgment should be granted for Defendant Ingersoll-Rand.

The same result obtains even if Illinois law is applied. A plaintiff must specifically identify the asbestos-containing products to which he was exposed and show that he was exposed to them with sufficient regularity and frequency to raise a question of fact as to whether they caused his alleged asbestos-related disease. *Thacker v. UNR Industries, Inc.*, 603 N.E.2d 449, 457 (Ill. 1992); *Johnson v. Owens-Corning Fiberglass Corp.*, 672 N.E.2d 885, 888 (3d Dist. 1996). There is no evidence in this case that Plaintiff was exposed to any asbestos-containing products from this Defendant at all, let alone with sufficient *regularity* and *frequency* to raise a question of fact as to whether Plaintiff inhaled asbestos-containing dust from them and suffered a resulting injury. *Thacker*, 603 N.E.2d at 457; *Johnson*, 672 N.E.2d at 888.

D.  **Defendant Is Also Entitled to Summary Judgment Because No Causal Relationship Exists Between Plaintiff's Alleged Exposure to Defendant's Products and His Alleged Injury.**

As outlined above, proof of specific causation is an essential element of Plaintiff's claim under both maritime and Illinois law. Here, Plaintiff failed to provide any evidence that any specific asbestos-containing product of Defendant's was a substantial contributing factor in Plaintiff's asbestosis. Plaintiff's only medical expert, Dr. Vuskovich, did not provide any product or defendant-specific opinions in his Rule 26 report. *See* Report of Dr. Matthew Vuskovich, Exh. G. Moreover, Dr. Vuskovich did not conclude in his Rule 26 expert that Plaintiff was even exposed to asbestos while serving in the Navy: "*If* Mr. Kochera was exposed to asbestos while

working with Defendant's products . . ." Exh. G, p. 5 (emphasis added). Similarly, Plaintiff's counsel stipulated at Dr. Vuskovich's deposition that Dr. Vuskovich cannot provide any defendant specific testimony. Deposition of Dr. Matthew Vuskovich, Exhibit I, at 265: 1-10.

Plaintiff cannot present any evidence, whether by fact witnesses or experts, regarding the frequency with, regularity with, or proximity to which he worked with or around Defendant's products. There is absolutely no evidence that Plaintiff worked with an asbestos-containing product from this Defendant for a substantial amount of time, or with the sufficient frequency, regularity, and proximity, to meet his burden of production as to causation under *Lindstrom* or *Thacker*.[1] Defendant is entitled to summary judgment on all counts of Plaintiff's complaint.

### E. Defendant Is Entitled to Summary Judgment Because Defendant Is Not Liable for Products Manufactured, Distributed, Supplied, or Sold by Third Parties.

As noted above, under maritime law the plaintiff must show that the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged. *Payne v. A.W. Chesterton Co.*, No. 2:11-67704-ER, 2013 WL 1883851 (E.D. Pa. Apr. 1, 2013). A defendant is not liable for injuries caused by products it neither manufactured nor distributed. *Id*; *Lindstrom v. A-C Product Liability Trust*, 424 F.3d 488, 494-95 (6th Cir. 2005). The U.S. District Court for the Eastern District of Pennsylvania recently the defendant's motion for summary judgment in a case involving alleged asbestos exposure on board a U.S. Navy ship. In *Conner v. Alfa Laval, Inc.*, after determining that maritime law governed the issue, the Court held:

> [U]nder maritime law, a manufacturer is not liable for harm caused by, and owes no duty to warn of the hazards inherent in, asbestos

---

[1] This case is wholly unlike *Tragarz v. Keene Corp.*, 980 F.2d 411, 418 (7th Cir. 1992) wherein the plaintiff testified to using the defendant's product, coworkers testified to working with the plaintiff while they both used the defendant's products, and plaintiff's co-worker recalled seeing other work with the product occurring around the plaintiff over a course of decades.

> products that the manufacturer did not manufacture or distribute. This principle is consistent with the development of products-liability law based on strict liability and negligence, relevant state case law, the leading federal decisions, and important policy considerations regarding the issue.

842 F. Supp. 2d 791, 801 (E.D. Pa. 2012).

Courts do not hesitate to grant summary judgment for the defendant in cases where the plaintiff has failed to present evidence that the defendant made or distributed the asbestos component parts. *Conner*, 842 F.Supp.2d at 801-802. It is undeniable that metal equipment does not contain or give off any asbestos dust or asbestos fibers.

Even when applying Illinois law, this Court has held that an aircraft manufacturer had no duty with respect to injuries caused by asbestos brakes that were replacements for the asbestos brakes in the original aircraft. *Niemann v. McDonnell Douglas Corp.*, 721 F. Supp. 1019, 1030 (S.D. Ill. 1989). The Court found that "McDonnell Douglas has sufficiently established that the asbestos which allegedly caused [decedent's] death was not the asbestos which was placed in the aircraft by McDonnell Douglas, and therefore…, McDonnell Douglas would be entitled to summary judgment…." *Id.* A manufacturer of one product has no duty to anticipate how its non-defective component might potentially become dangerous when integrated into an assembly of allegedly defective components manufactured by others. *See Rotzoll v. Overhead Door Corp.*, 289 Ill.App.3d 410, 414, 681 N.E.2d 156, 159 (4th Dist. 1997).

Here, there is no evidence that Defendant manufactured or distributed any of the allegedly asbestos-containing products in this case. The ships Plaintiff served on were built over ten years before Plaintiff boarded them, so he did not know what repairs had been done before he boarded. Defendant is not liable for any third-party insulation, packing, or gaskets that Plaintiff might have worked around in the Navy. Because Defendant does not owe a duty to Plaintiff for

other companies' products, Defendant is entitled to summary judgment as to all claims related to the use of others' products in conjunction with Defendant's products.

Further, to the extent that Plaintiff might argue that Defendant is liable for insulation that contained asbestos and was applied to piping and related equipment in the Navy, Plaintiff does not allege that Defendant is liable for third-party products in the complaint. The complaint alleges that Plaintiff was exposed to asbestos fibers from certain products he was working with and around that were "manufactured, sold, distributed, installed or promoted *by the Defendants*." Doc. 1, Exh. A, ¶ 3. It then alleges that "Defendants had a duty to exercise reasonable care and caution for the safety of the Plaintiff and others working with and around the products *of the Defendants* containing asbestos." *Id.* at ¶ 42 (emphasis added). Thus, in addition to the legal authority cited above that Defendant is not liable for third-party products, Defendant is entitled to summary judgment because Plaintiff at no time alleges that Defendant had a duty for third-party products, such as pipe insulation, supplied to the Navy by other manufacturers and distributors.

## CONCLUSION

WHEREFORE, for all of the above reasons, Defendant Ingersoll-Rand Company (erroneously sued herein as Ingersoll-Rand Company, Individually and as Successor to Terry Steam Turbine Company) moves this Court for an order granting its Motion for Summary Judgment, to enter judgment in Defendant's favor and against Plaintiff, for its costs herein expended, and for any other relief that the Court deems just and proper under all of the circumstances.

Respectfully submitted this 3rd day of April, 2015.

HEPLERBROOM LLC

By:_/s/ Ben J. Wilson_____
BEN J. WILSON      # 63329
CARL J. GERACI     #6257069
130 N. Main St.
Edwardsville, IL 62025
Phone: (618) 656-0184
Fax: (618) 656-1364
hbasb@heplerbroom.com
Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

**ANDREW V. KOCHERA, JR.,**

    **Plaintiff,**

v.                            No. 14-CV-00029-SMY-SCW

**FOSTER WHEELER, LLC,** *et al.***,**

    **Defendants.**

### CERTIFICATE OF SERVICE

The undersigned states that on the 3rd day of April, 2014, Defendant Ingersoll-Rand Company (erroneously sued herein as Ingersoll-Rand Company, Individually and as Successor to Terry Steam Turbine Company) electronically served its Motion for Summary Judgment on all counsel of record via CM/ECF filing with this Court.

                                     HEPLERBROOM LLC

                                     By: /s/ Ben J. Wilson
                                     BEN J. WILSON     # 63329
                                     CARL J. GERACI    #6257069
                                     130 N. Main St.
                                     Edwardsville, IL 62025
                                     Phone: (618) 656-0184
                                     Fax: (618) 656-1364
                                     hbasb@heplerbroom.com
                                     Attorneys for Defendant