IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDREW V. KOCHERA, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-CV-29-SMY-SCW |
| | ) |
| FOSTER WHEELER, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Pending before the Court is the Motion for Summary Judgment filed by Defendant General Electric Company (Doc. 204). For the reasons set forth below, the Motion is **DENIED**.

### FACTUAL BACKGROUND

Plaintiff Andrew V. Kochera, Jr. filed this action alleging he sustained injuries as a result of exposure to asbestos-containing products attributable to General Electric ("GE") and various other defendants (*see* Doc. 3-1). More specifically, Plaintiff alleges he contracted severe asbestosis as a result of inhaling airborne asbestos fibers while serving aboard United States Navy ships as an enlisted sailor between 1954 and 1957 (Doc. 3-1). Although Plaintiff served on several ships during his naval service, the majority of his alleged exposure occurred while aboard the USS Franklin D. Roosevelt ("Roosevelt").

Plaintiff served on the Roosevelt from April 6, 1956 until July 5, 1957 (Doc. 231-1). He was a fireman assigned to the A division to work in the ice-machine room where the freezers were located (Doc. 231-2, pp. 50-51). In addition, Plaintiff often assisted sailors in the boiler and engine rooms with their maintenance work (Doc. 231-2, p. 51).

1

When Plaintiff began his tour on the Roosevelt, the ship was dry-docked in Bremerton, Washington for a complete overhaul (Doc. 231-2, pp. 48-49). During the overhaul, Plaintiff worked in the engine, boiler, and ice rooms (Doc. 231-2, p. 56). One of Plaintiff's duties was to stand watch while others worked on machinery (Doc. 231-2, pp. 289-290). He was present while others worked on machinery in the boiler and engine rooms (Doc. 231-2, pp. 287-291). After the work was completed, Plaintiff was responsible for sweeping the floors (Doc. 231-2, p. 145, pp. 288-289). Plaintiff testified that the maintenance work performed in the boiler rooms was a dusty job (Doc. 231-2, pp. 288-289). While sweeping, Plaintiff breathed in dust he believed contained asbestos (*Id*.).

Plaintiff as well as several witnesses testified that GE manufactured turbines aboard the Roosevelt (*see* Doc. 204-1, Doc. 231-2, p. 124-127, Doc. 231-4, p. 29). The turbines were located in the engine room (Doc. 204-2, pp. 124-125). GE turbines utilized heat insulation (Doc. 204-6, ¶ 4). The insulation used on the GE turbines contained asbestos (Doc. 231-2, p. 279; Doc. 231-4, p. 133). The temperature in the engineering spaces on the Roosevelt rose above 125 degrees Fahrenheit (Doc. 231-4, p. 154). Plaintiff installed and removed the valve of a GE turbine (Doc. 231-2, pp. 123-124). The process involved removing asbestos and reapplying asbestos wrap on the valves (*Id*.). Plaintiff testified that insulating material was removed while he was in the engine room and he assisted in the removal (Doc. 231-2, pp. 119-121). The covering on the GE turbines were patched as needed (Doc. 231-4, pp. 152-153). This process created dust (*Id*.).

The blueprints and manuals for various machinery, including those manufactured by GE, were located aboard the Roosevelt (Doc. 231-5, pp. 147-148; Doc. 231-4, pp. 148-149). The manufacturers specified the materials utilized on the machinery (Doc. 231-4, p. 148). The

Military Specification ("MilSpec") governing Navy turbines called for "heat insulation and lagging" (Doc. 204-6, ¶ 4). GE turbines manufactured for the Navy did not have any heat insulation materials installed on them at the time they left GE's control (*Id.*). The heat insulation was applied at some point afterwards (*Id.*). GE was not involved in the process of supplying and installing heat insulation materials (*Id.*). Plaintiff testified that he witnessed GE employees working on the turbines aboard the Roosevelt (Doc. 231-2, pp. 128-129, 278-279). Another witness also testified to observing GE employees on the Roosevelt (Doc. 231-4, p. 155).

## ANALYSIS

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). *See also RuffinThompkins v. Experian Information Solutions, Inc.,* 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.,* 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of a nonmoving party's case necessarily renders all other facts immaterial." *Id.* As the Seventh Circuit has noted, summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v.*

*Myers,* 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory,* 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted).

### Applicable Law

As an initial matter, the Court must determine what law governs this lawsuit: Illinois or maritime law. GE asserts that maritime law applies because Plaintiff's alleged exposure to its products occurred while he was onboard the Roosevelt. Plaintiff does not dispute the applicability of maritime law. Rather, Plaintiff contends there is no conflict between Illinois law and maritime law because the outcome is the same – GE is not entitled to summary judgment.

Normally, federal courts apply the choice of law rules of the forum state to determine what substantive law governs an action. *See Various Plaintiffs v. Various Defendants ("Oil Field Cases"),* 673 F.Supp.2d 358, 362–63 (E.D.Pa.2009). If the case sounds in admiralty, however, it would be inappropriate to apply Illinois law instead of federal admiralty law. *See* 28 U.S.C. § 1333(1). Therefore, "[t]he initial step in the choice of law analysis is to determine whether this case "sounds in admiralty." *Gibbs v. Carnival Cruise Lines,* 314 F.3d 125, 131 (3rd Cir. 2002). Whether maritime law is applicable is a threshold issue that is a question of federal law governed by the law of the circuit in which the district court sits. *Conner v. Alfa Laval, Inc.,* 799 F.Supp.2d 455, 460 (E.D.Pa.2011) (citing U.S.C.A. Const. Art. III, § 2; 28 U.S.C. § 1333(1); *In re Asbestos Prods. Liab. Litig.* (*Oil Field Cases*), 673 F.Supp.2d 358, 362 (E.D.Pa.2009)).

In order for maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. In *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995), the Supreme Court defined these tests as follows:

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on

> navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce [.]" Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

*Grubart,* 513 U.S. at 534, 115 S.Ct. 1043 (internal citations omitted).

The locality test requires that the tort occur on navigable waters or, for injuries suffered on land, that the injury is caused by a vessel on navigable waters. *Grubart,* 513 U.S. at 534, 115 S.Ct. 1043. The locality test is satisfied as long as some portion of the asbestos exposure occurred on a vessel on navigable waters. *See Conner,* 799 F.Supp.2d at 466. "In assessing whether work was on 'navigable waters' (i.e., was sea-based) it is important to note that work performed aboard a ship that is docked at the shipyard is sea-based work, performed on navigable waters." *Sisson v. Ruby,* 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)). Here, Plaintiff's alleged exposure to asbestos occurred exclusively during his naval service from November 1954 until July 1957. Specifically, Plaintiff alleges asbestos exposure from his work in the boiler, engine, and ice rooms located on the Roosevelt. This work occurred while the vessel traveled navigable waters as well as while the ship was dry-docked. Thus, the locality test is met.

The connection test requires that "the type of incident involved has a potentially disruptive impact on maritime commerce and that the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart,* 513 U.S. at 534, 115 S.Ct. 1043 (quoting *Sisson,* 497 U.S. at 364, 365 & n. 2, 110 S.Ct. 2892). If an allegedly defective product was produced for use on a naval vessel, an ensuing tort inflicted on a sea-based service member working on that vessel is governed by maritime law. *See Quirin v. Lorillard Tobacco Co.,* 17 F. Supp. 3d 760, 767 (N.D. Ill. 2014). The Court finds that the

products at issue in this case were essential for the proper functioning of ships and bear a substantial relationship to traditional maritime activity. Therefore, the connection test is also satisfied. Accordingly, maritime law is applicable to Plaintiff's claims against the Defendants.

## Causation

In determining whether a defendant is liable under maritime law for injuries caused by asbestos used in its products, a plaintiff must establish causation. *See Lindstrom v. A–C Prod. Liab. Trust,* 424 F.3d 488, 492 (6th Cir.2005). Causation is established under maritime law by showing that (1) the plaintiff was exposed to the defendant's product and (2) the product was a substantial factor in causing the plaintiff's injury. *See Conner,* 842 F. Supp. 2d at 797. There must be evidence of more than a "minimal contact" or "minimal exposure" to the defendant's product. *Lindstrom,* 424 F.3d at 492. A plaintiff may raise a genuine issue of material fact by presenting direct evidence that he worked on or near the asbestos-containing components of specific products. *Cabasug v. Crane Co.,* 989 F. Supp. 2d 1027, 1037-38 (D. Haw. 2013). A plaintiff may also present circumstantial evidence of exposure; evidence regarding the prevalence of a defendant's product, combined with evidence of a plaintiff's regular duties, may support the reasonable inference that a plaintiff worked on a particular product. *Id.*; *see also Tragarz v. Keene Corp.*, 980 F.2d 411, 418 (7th Cir. 1992). A plaintiff does not have to present direct evidence that he recalled working on a particular product by the defendant or recall the particular vessel upon which it was installed. *Id.*

GE argues that there is insufficient evidence that Plaintiff ever worked on or around GE turbines or equipment. The Court disagrees. Plaintiff, as well as several fact witnesses, testified that GE turbines were aboard the Roosevelt. Plaintiff testified that he removed and reapplied asbestos wrap on the valves of the GE turbine. Plaintiff further testified that he was in the engine

room while the GE turbines were repaired. The removal process was dusty. Following the work of other sailors, it was Plaintiff's job to sweep up – a process which caused the dust to go airborne. Thus, there is sufficient circumstantial evidence of asbestos exposure to avoid summary judgment.

### Duty to Warn

GE argues that it is not liable for injuries caused by products it neither manufactured nor distributed and that GE sold "bare metal" steam turbines to the Navy for installation aboard the Roosevelt. This is sometimes referred to as the "bare metal defense." *See Quirin*, 17 F.Supp.3d at 769-770. In *Quirin*, the Northern District of Illinois noted:

> In general, consistent with the bare metal defense, a manufacturer is not liable for materials it did not supply. But a duty may attach where the defendant manufactured a product that, by necessity, contained asbestos components, where the asbestos-containing material was essential to the proper functioning of the defendant's product, and where the asbestos-containing material would necessarily be replaced by other asbestos-containing material, whether supplied by the original manufacturer or someone else.

*Quirin,* 17 F. Supp. 3d at 769-70. The *Quirin* court denied summary judgment to the defendant, finding the record contained sufficient evidence for a reasonable jury to conclude that the defendant's valves required asbestos-containing components to function in the high heat applications for which they were marketed. On those facts, the court reasoned that a duty to warn of foreseeable risks could attach.

In this case, GE asserts that, to the extent any heat insulation material was later applied to its turbines, GE was not involved with that process. Plaintiff, on the other hand, points to evidence indicating that GE turbines required asbestos-containing components to function properly in the high-heat applications for which they were supplied and that GE was aware of this fact. The temperature of the engineering spaces where Plaintiff worked was about 125

degrees Fahrenheit.  Plaintiff's witnesses testified that the blueprints of the machinery specified the utilization of insulation and packing.  GE admits that the MilSpecs called for heat insulation.  Further, there is testimony that GE employees worked on the GE turbines aboard the Roosevelt.

Like the *Quirin* court, this Court is not convinced that a manufacturer should avoid liability on a failure to warn theory where it designed its products to be used with asbestos-containing materials.  A jury could certainly conclude that it was foreseeable the product would subject those working with it to the possible hazards of asbestos exposure.  Accordingly, summary judgment is denied.

**IT IS SO ORDERED.**

**DATED:  September 23, 2015**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**